**THE VIRGIN ISLANDS BAR, BY AND THROUGH THE ETHICS AND GRIEVANCE COMMITTEE OF THE VIRGIN ISLANDS BAR (ST. THOMAS AND ST. JOHN SUBCOMMITTEE), Petitioner**
**v.**
**STEPHEN A. BRUSCH, Respondent**

S. Ct. BA Nos. 2007/64, 2007/65

Supreme Court of the Virgin Islands

March 3, 2008

CHAD MESSIER, ESQ., St. Thomas, U.S.V.I., *Attorney for Petitioner*.

LEONARD FRANCIS, ESQ., St. Thomas, U.S.V.I., *Attorney for Respondent*.

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and ROSS, *Justice Pro Tem.*[1]

## MEMORANDUM OPINION

### (March 3, 2008)

The Virgin Islands Bar, by and through the Ethics and Grievance Committee (the "Bar"), filed two petitions with this Court for disciplinary action against respondent, Attorney Stephen A. Brusch ("Brusch"). The two petitions allege that Brusch violated several rules of the Model Rules of Professional Conduct relating to his failure to communicate with clients and remit funds due to clients. In both petitions, the Bar recommends that we disbar Brusch. For the reasons which follow, we find that Brusch has violated some of the most important ethical duties an attorney owes to his clients and that the only appropriate sanction is disbarment.

## I. JURISDICTION AND STANDARD OF REVIEW

■ The Virgin Islands Code vests the Supreme Court with "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted to the practice of law." V.I. CODE ANN. tit. 4, § 32(e) (2007 Supp.). The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an

---

[1] Chief Justice Rhys S. Hodge recused himself from consideration of the matter in an Order dated May 22, 2007.

order from this Court to disbar an attorney from the practice of law in the Virgin Islands. *See* V.I. S. CT. R. 207.4.3(b)(II)(3).[2] In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 5, intro. note (2000).[3] Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. *See* VISCR 207.4.4; MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT R. 18(C) (2007);[4] *Salve Regina College v. Russell*, 499 U.S. 225, 232-33, 111 S. Ct. 1217, 1221-22, 113 L. Ed. 2d 190 (1991) (independent review of lower tribunal's disciplinary analysis requires careful review of legal analysis); *Matter of the Disciplinary Proceedings of Phelps*, 637 F.2d 171, 177 (10th Cir. 1981) (exercised independent review of evidence to determine whether there was clear and convincing proof that attorney was guilty of misconduct); *In re Discipline of Droz*, 160 P.3d 881, 884-85 (Nev. 2007) (exercised independent judgment to determine whether discipline was warranted). Our review in this respect is virtually *de novo,* except we do not hear and consider anew live testimony. *See Phelps*, 637 F.2d at 176. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted. *See Droz*, 160 P.3d at 884-85.

---

[2]  Former Superior Court Rules 301, 303, 304, 305, 306, and 307 have been adopted and amended by the Supreme Court as Supreme Court Rules 201, 203, 204, 205, 206, and 207, respectively. *See* Promulgation Order No. 2007-0011. Inasmuch as the language of the former Superior Court Rules has been adopted, virtually verbatim, as part of the new Supreme Court Rules, our citations in this Opinion will be to the Supreme Court Rules. Rule 207 consists of the Rules of the Ethics and Grievance Committee.

[3]  Pursuant to title 1, section 4 of the Virgin Islands Code "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."

[4]  The Model Rules for Lawyer Disciplinary Enforcement are applicable in the Virgin Islands pursuant to Rule 203(a) of the Virgin Islands Supreme Court Rules.

## II. FACTS AND BACKGROUND: S. CT. BA NO. 2007-64

The petition in this case arose out of a grievance filed against Brusch by a former client, Julio Colon, Jr. ("Colon"). Colon was incarcerated when he retained Brusch to handle certain probate and property matters. In late June of 2002, Colon paid Brusch a total of $10,000.00 as a retainer for the representation. In a letter dated July 17, 2002, Colon urged Brusch to take immediate action to prevent the sale of certain real estate that was the subject of his representation. It is unclear whether Brusch took any action on the matter, but on November 3, 2003, Colon sent Brusch a letter advising him that he had retained another attorney. In the letter, Colon complained about the complete lack of communication from Brusch, and Colon demanded an immediate refund of the unearned portion of the retainer. Brusch never responded to Colon's letter. On February 3, 2004, Colon's new attorney, who had repeatedly demanded, but was unsuccessful in obtaining a refund, sent a letter to Brusch protesting Brusch's broken promises to repay the unearned retainer. In the letter, Colon's new attorney warned that if he did not hear from Brusch by the close of business that day, he would recommend that Colon file a grievance with the Bar.

Colon filed his grievance against Brusch with the Bar on February 19, 2004. In the grievance, Colon alleged that Brusch came to see him only once, and as far as Colon knew, Brusch never did anything else on his case. Colon asserted that Brusch had still not repaid the unearned retainer. On July 8, 2004, the Bar notified Brusch of the grievance. The notice generally informed Brusch about the grievance, the appointment of the adjudicatory panel members, and the opportunity to seek recusal of the appointed members. Brusch did not respond to the letter. In a letter dated November 22, 2004, the case investigator assigned to the grievance forwarded Brusch a copy of the grievance and the supporting materials supplied by Colon. The letter requested Brusch to respond to the grievance by December 20, 2004. Brusch did not reply to the grievance, and on the morning of December 28, 2004, the case investigator faxed him a letter requesting a response by noon that day. Again, Brusch failed to respond.

The adjudicatory panel chairperson scheduled a hearing on the grievance to take place on September 7, 2006. The panel notified Brusch of the hearing in a notice that was both hand-delivered to Brusch's office

413

on August 1, 2006, and sent by United States certified mail. The hearing notice reiterated the allegations in Colon's grievance and noted that Brusch did not contest the allegations. The notice also stated, among other things, that if Brusch failed to appear at the hearing, the panel could proceed with "an adjudication of the Grievance and the imposition of sanctions on a default basis." (*Colon v. Brusch*, No. 22/2003-STT, Hr'g Notice 5.) Brusch did not request a continuance and failed to appear at the hearing.

Following the hearing, the adjudicatory panel issued a Memorandum of Decision concluding that Brusch violated the following Model Rules of Professional Conduct: Rule 1.4(a)(4) (duty to communicate with clients), Rules 1.5(a)-(b) (rules governing fee agreements with clients), and Rule 1.16(d) (attorney's duties upon terminating representation).[5] *See* MODEL RULES OF PROFESSIONAL CONDUCT (2007). After considering numerous factors contained in the American Bar Association's Standards for Imposing Lawyer Sanctions,[6] the panel determined that Brusch should be disbarred from practicing law in the Virgin Islands.

The Bar subsequently filed the instant petition requesting that the Court disbar Brusch. The Bar also petitioned the Court for the immediate interim suspension of Brusch based on the misconduct alleged in the two Petitions presently before the Court. At a June 8, 2007 hearing on the Bar's interim suspension petition, Brusch, represented by counsel, conceded that he had completely failed to respond to both grievances before the Court and that he was guilty of the ethical violations charged in the grievances. Following the hearing, the Court granted the Bar's petition and immediately suspended Brusch, pending final determination of the grievance.[7]

In the Order of Immediate Interim Suspension, the Court required Brusch to send a Notice of Court-Ordered Sanctions, within ten days, to all of his clients, co-counsel, opposing counsel, courts and agencies

---

[5] The American Bar Association's Model Rules of Professional Conduct apply in the Virgin Islands pursuant to Rule 203(a) of the Virgin Islands Supreme Court Rules.

[6] The American Bar Association's Standards for Imposing Lawyer Sanctions are applicable in the Virgin Islands pursuant to Rule 203(a) of the Virgin Islands Supreme Court Rules. The MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT, which are also applicable in the Virgin Islands, also adopt the ABA Standards. *See* MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT R. 10(C) (2007).

[7] *See* VISCR 207.6.20-207.6.21 (standards and order of immediate interim suspension).

before which he was practicing, and financial institutions at which he had a client trust or operating account.[8] The Court further required Brusch to file an affidavit showing that he had complied with the requirements of the Notice of Court-Ordered Sanctions.[9] In the Order, we informed Brusch that if he failed to timely comply with the notice and affidavit requirements, the Court would appoint an attorney-trustee to collect and inventory his files and bank records. Brusch failed to comply with the Court's Order in several significant respects, and on August 9, 2007 the Court entered an Order appointing an attorney-trustee over Brusch's law practice.

The Bar's disbarment petition came before the Court for oral argument on October 26, 2007. The Bar argued that Brusch should be disbarred for his unethical conduct. Brusch responded that the Court should impose a sanction of probation with limited supervision. In support of his position, Brusch argued that newspaper articles concerning the matter served as a public reprimand and that his unethical conduct was mitigated by the fact that he had recently paid full restitution to the grievants.

### III. FACTS AND BACKGROUND: S. CT. BA NO. 2007-65

The petition in this case arose out of a grievance filed against Brusch by a former client, Fitzgerald Morris ("Morris"). Brusch represented Morris, who is blind, as the plaintiff in a lawsuit. On May 18, 2005, prior to trial, Morris agreed to settle the action for $250,000.00, and Brusch agreed that he would accept $50,000.00 of the settlement proceeds for his fee. Although Brusch received the entire settlement amount of $250,000.00, in the latter part of May he remitted only $162,345.02 to Morris. Brusch acknowledged that he owed Morris an additional $37,654.98 from the settlement proceeds and promised Morris that the payment was forthcoming. Morris visited Brusch's office on several occasions to obtain the balance of his settlement, but Brusch kept delaying the payment. Morris also repeatedly telephoned Brusch about the payment, but Brusch would not respond to his calls. On September 8, 2005, Morris filed his grievance against Brusch, complaining that Brusch

---

[8]   The Notice of Court-Ordered Sanctions is required by Rule 207.5.5 of the Virgin Islands Supreme Court Rules.

[9]   *See* VISCR 207.5.5(g) (requiring affidavit of compliance).

still owed him the $37,654.98, and would not communicate with him regarding the matter.

On November 1, 2005, the Bar notified Brusch of the grievance. The notice provided Brusch with a copy of the grievance and informed him, among other things, of his obligation to respond within thirty days. Brusch did not respond as directed, and on July 11, 2006, the case investigator assigned to the grievance sent Brusch a second notice requiring him to respond no later than July 17, 2006. Brusch signed a receipt acknowledging delivery of the July 11, 2006 notice, but again neglected to file a response to the grievance.

On July 26, 2006, the Bar notified Brusch that a hearing on the grievance would take place on September 7, 2006. The hearing notice restated the allegations in Morris' grievance and noted that Brusch did not contest the allegations. Brusch was informed by the notice, among other things, that if he failed to appear at the hearing, the panel could "proceed to an adjudication of the Greivance [sic] and the imposition of sanctions on a default basis." (*Morris v. Brusch*, No. 27-2005-STT, Hr'g Notice 4.) Brusch did not request a continuance and failed to appear at the hearing.

Following the hearing, the adjudicatory panel issued a Memorandum of Decision concluding that Brusch violated the following Model Rules of Professional Conduct: Rule 1.4(a)(4) (duty to communicate with clients), Rule 1.15(d) (duty to safeguard client property), and 8.1(b) (duty to comply with demand from disciplinary authority). Upon considering numerous factors contained in the American Bar Association's Standards for Imposing Lawyer Sanctions, the panel determined that Brusch should be disbarred from practicing law in the Virgin Islands.

The Bar subsequently filed the instant petition requesting that the Court disbar Brusch. As is discussed above, the Bar also petitioned the Court for the immediate interim suspension of Brusch. The history concerning Brusch's response to the petition for immediate interim suspension, the Court's subsequent Order for Immediate Interim Suspension, and the oral argument on the Bar's petitions for interim suspension and disbarment are stated above in the facts and background statement of S. Ct. BA No. 2007-64 and need not be repeated here.

## IV. DISCUSSION OF ETHICAL VIOLATIONS

■ Our assessment of the record in these two cases was facilitated, in part, by the fact that the evidence was virtually uncontested. Indeed, not

only did Brusch fail to proffer any exculpatory evidence regarding the charged grievances, he expressly conceded the truth of the allegations at the June 8, 2007 hearing before this Court on the Bar's Petition for Immediate Interim Suspension. Furthermore, because Brusch failed to answer the grievances, he is deemed by this Court's rules to have admitted the truth of the factual allegations in the grievances. In this regard, Rule 207.1.11 of the Virgin Islands Supreme Court Rules provides that "[f]ailure to timely answer the grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis."[10] Likewise, because Brusch failed to appear at the adjudicatory hearings before the Bar, he is deemed to have admitted the factual allegations in the grievances pursuant to Rule 207.3.3 which provides that "[i]f the Respondent fails to appear for the Panel hearing . . . the Respondent shall be deemed to have admitted all factual allegations contained in the grievance, and to have waived his right to object to the imposition of sanctions in accordance with the Rules and the ABA's Standards for Imposing Lawyer Sanctions."[11]

In light of the uncontested evidence, Brusch's actual admissions that he engaged in the charged misconduct and the factual concessions that flowed from his failure to participate in the proceedings before the Bar, we are convinced of the truth of the factual allegations charged in each of the two grievances before the Court. Moreover, we reach the same conclusion even without the benefit of Brusch's admissions to these factual allegations. Our careful and independent review of the evidence of record, the parties' arguments and the adjudicatory panels' decisions in each grievance, compel but one conclusion: there is clear and convincing evidence that Brusch engaged in egregious misconduct to the detriment of his clients, the legal system, the Bar, and the public at large. Under these circumstances, we adopt the findings of fact presented by the Bar's

---

[10] Rule 33(a) of the Model Rules for Lawyer Disciplinary Enforcement similarly provides that "[f]ailure to answer charges filed shall constitute an admission of the factual allegations."

[11] Rule 33(b) of the Model Rules for Lawyer Disciplinary Enforcement likewise provides that "[i]f respondent should fail to appear when specifically so ordered by the committee or the board, the respondent shall have been deemed to have admitted the factual allegations which were to be the subject of such appearance and/or a concession to any motion or recommendations to be considered at such appearance."

adjudicatory panels in the Memorandums of Decision for *Colon v. Brusch*, No. 22/2003-STT and *Morris v. Brusch*, No. 27/2005-STT.

██ In light of these findings, we conclude that Brusch violated the following ethical rules of the Model Rules of Professional Conduct. In S. Ct. BA No. 2007-64, Brusch violated Rules 1.4(a)(3)-(4) and 1.16(d) of the Model Rules of Professional Conduct.[12] Rules 1.4(a)(3)-(4) require a lawyer to "(3) keep the client reasonably informed about the status of the matter; [and] (4) promptly comply with reasonable requests for information . . . ." MODEL RULES OF PROF'L CONDUCT R. 1.4(a)(3)-(4). In this case, Brusch completely failed to communicate with Colon about the status of his representation, even after Colon sent Brusch a letter requesting that he take immediate action on a probate matter. Brusch also failed to respond to the repeated requests from Colon and his new attorney about the status of the retainer refund. Brusch's inaction regarding the retainer refund is also a violation of Rule 1.16(d) which provides, in pertinent part, that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred." MODEL RULES OF PROF I CONDUCT R. 1.16(d). Brusch plainly violated this rule by failing to refund Colon's retainer.

██ In S. Ct. BA No. 2007-65, Brusch violated Rules 1.4(a)(4) and 1.15(d) of the Model Rules of Professional Conduct. Rule 1.4, which is stated above, required Brusch to promptly comply with Morris' repeated requests for information about the status of the settlement proceeds. *See* MODEL RULES OF PROF'L CONDUCT R. 1.4(a)(4). Instead of responding, Brusch ignored Morris' requests for information. Moreover, Brusch's failure to promptly deliver the balance of the settlement proceeds due to Morris was a violation of Rule 1.15(d) which provides, in pertinent part:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or

---

[12] Although the Bar asserts that Brusch also violated Rule 1.5(a)-(b) of the Model Rules of Professional Conduct, which prohibit unreasonable fees and require an attorney to communicate the fee rate to the client, we do not find clear and convincing evidence in the record that Brusch violated these rules.

by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

MODEL RULES OF PROF'L CONDUCT R. 1.15(d).

■ We also find, that by failing to respond to the grievances in both cases, Brusch violated Rule 8.1 of the Model Rules of Professional Conduct. Rule 8.1 prohibits a lawyer, in connection with a disciplinary matter, from knowingly failing to respond to a lawful demand for information from a disciplinary authority. MODEL RULES OF PROF'L CONDUCT R. 8.1(b). Here, the Rules of the Ethics and Grievance Committee required Brusch to respond to the grievances[13] and the Bar provided him numerous opportunities to respond, yet Brusch inexplicably remained silent and failed to appear at the adjudicatory hearings. Brusch's failure to respond to the grievances violated Rule 8.1(b).

## V. SANCTIONS

Having found that Brusch violated several significant ethical duties, we must determine the appropriate sanction. In considering the various alternatives,[14] we are mindful that the purpose of disciplinary sanctions, as is explained in the American Bar Association's Standards for Imposing Lawyer Sanctions, "is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1 (1986 as amended 1992). Upon considering Brusch's ethical breaches in light of the ABA Standards, the Bar has recommended that we disbar Brusch in each of the two cases before the Court.

■ In exercising our independent judgment concerning the proper sanction, we too are guided by the Standards for Imposing Lawyer

---

[13] *See* VISCR 207.1.11 (providing that "[a]ll grievances shall be answered by the Respondent within the time set by these Rules").

[14] The various disciplinary sanctions and remedies for attorney misconduct are stated under Standards 2.1 through 2.8 of the ABA Standards for Imposing Lawyer Sanctions.

Sanctions. Under these Standards, we must consider the following four factors: "[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors." STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0; *see also* MODEL RULES FOR LAWYER DISCIPLINARY ENFORCEMENT R. 10(C). The Court considers the first three factors to initially determine the appropriate sanction. STD'S FOR IMPOSING LAWYER SANCTIONS § II. We will then consider the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination. *See id.*

■ **1. The Duty Violated.** Initially, we recognize that "the most important ethical duties are those which a lawyer owes to clients." *Id.* These obligations include not only the lawyer's duty to communicate with his clients, but more importantly, the duty to preserve client property. The unearned portion of the retainer that Colon paid to Brush was Colon's property. Likewise, the settlement proceeds paid to Brusch in his representation of Morris were Morris' property. In both cases, the ethical rules required Brusch to use the utmost care in safeguarding his clients' property and to remit those funds to his clients when the circumstances required. Thus, the ABA Standards provide that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.11.

■ "Knowing conversion or misappropriation of client money 'consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking.'" *People v. Brown*, 161 P.3d 1286, 1293 (Colo. 2007) (quoting *People v. Varallo*, 913 P.2d 1, 11 (Colo. 1996)); *see also In re Noonan*, 506 A.2d 722, 723 (N.J. 1986) (In a misappropriation case, "[i]t makes no difference whether the money is used for a good purpose or a bad purpose, for the benefit of the lawyer or for the benefit of others, or whether the lawyer intended to return the money when he took it, or whether in fact he ultimately did reimburse the client; nor does it matter that the pressures on the lawyer to take the money were great or minimal.").

We cannot overstate the importance of a lawyer's duty to safeguard and accurately account for a client's property. Whether that property is a retainer paid in advance of services, settlement proceeds remitted to an

attorney on a client's behalf, or funds entrusted to an attorney under the myriad other circumstances that arise in rendering legal or escrow services, if it is the property of another, it *must* remain untouched, kept separate from the lawyer's business and personal property, and deposited in one or more trust accounts. *See* MODEL RULES OF PROF'L CONDUCT R. 1.15 cmt. In this case, we are troubled as much by the imprudent manner in which Brusch obviously handled his clients' funds as we are by his continued disregard of their pleas for the money. It is obvious that Brusch's unauthorized retention of the funds due and owing to his clients is a conversion of those funds, therefore, we need only determine whether Brusch's knowingly retained those funds.

**2. The Lawyer's Mental State.** In violating a duty, a lawyer may act intentionally, knowingly, or negligently. STD'S FOR IMPOSING LAWYER SANCTIONS § II. Conduct is intentional when the lawyer acts with the "conscious objective or purpose to accomplish a particular result." STD'S FOR IMPOSING LAWYER SANCTIONS § III. When the lawyer acts with "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result," the conduct is done knowingly. *Id.* The least culpable mental state is negligence. A lawyer acts negligently when the lawyer fails "to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

◼ In this case, Brusch's clients repeatedly demanded that Brusch remit the funds due to them. Brusch ignored those demands and refused to communicate with his clients regarding the matters. Considering these circumstances, and that Brusch later acknowledged that he failed to refund the money, it is patently obvious that he was consciously aware that he had not remitted the funds when he was required to do so. Thus, we conclude that Brusch's conversion of the funds was, at a minimum, knowing.

◼ **3. The Potential or Actual Injury Caused by the Lawyer's Misconduct.** The extent of the injury in a misappropriation case is determined by examining the extent of the actual or potential loss to the client. STD'S FOR IMPOSING LAWYER SANCTIONS § II. In this case, Brusch has conceded that he failed to remit significant settlement proceeds due to a client and also failed to refund a substantial deposit owed to another client. Although Brusch has now apparently refunded the money, Colon

was deprived of his funds for approximately four years, and Brusch kept Morris' money for approximately two and one-half years.

Our initial determination of the appropriate sanction, based on Brusch's knowing conversion of his clients' property and the injury caused to those clients, is that Brusch should be disbarred. We now turn our attention to whether any relevant aggravating or mitigating circumstances merit a departure from the initial determination.

■ **4. Aggravating or Mitigating Circumstances.** An aggravating circumstance is one that may justify a more severe sanction, while a mitigating circumstance is one that may justify a more lenient sanction. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's 9.21, 9.31. The aggravating circumstances in these cases are as follows: Brusch engaged in a pattern of misconduct involving multiple offenses; he exhibited bad faith by intentionally failing to comply with the rules and the notices of the Bar; the victims in both case were vulnerable, one incarcerated, the other vision-impaired; Brusch engaged in these ethical violations even though he had substantial experience in the practice of law; and Brusch was indifferent in making restitution and did not do so until after the Court suspended him from practicing law. *See* STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's 9.22(c)-(e), (h)-(j). In mitigation of his conduct, we find that Brusch has no prior disciplinary record, a good reputation in the legal community, and he has recently exhibited remorse for his conduct. *See* STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std's 9.32(a), (g), and (l).

Considering the totality of these circumstances, we find nothing to alter our initial determination that Brusch should be disbarred for his misconduct. Indeed, the circumstances in these cases present a picture of a highly experienced, reputable attorney who inexplicably engaged in a pattern of misconduct that included a total failure to communicate with clients, knowingly converting client funds, and violating several rules and Court orders associated with the ensuing disciplinary proceedings.

## VI. CONCLUSION

For the reasons stated above, we conclude that Brusch should be disbarred from the practice of law in the Virgin Islands. Brusch knowingly violated significant rules of professional conduct relating to client communications and the safeguarding of client property. When grievances arising from Brusch's conduct were filed with the Bar, he

failed to respond to those grievances in violation of the Rules of the Ethics and Grievances Committee and did not attend the disciplinary proceedings where the grievances were adjudicated. Brusch's indifference to the proceedings continued when the Bar's Petition for Interim Suspension reached this Court. Although the Court entered a detailed order requiring Brusch to timely serve a Notice of Court-Ordered Sanctions on numerous parties, Brusch cavalierly disregarded many requirements of that order. In light of this continuing pattern of misconduct and the serious nature of Brusch's ethical violations, his disbarment is necessary to protect the public and the administration of justice from further professional wrongdoing.