# IN THE MATTER OF THE DISBARMENT OF: MONIQUE D. MCLAUGHLIN, ESQUIRE AS A MEMBER OF THE VIRGIN ISLANDS BAR

S. Ct. Civil No. 2013-0093

Supreme Court of the Virgin Islands

228

229

230

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(December 5, 2013)

PER CURIAM. This matter is before the Court pursuant to a petition for disciplinary action filed by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court approve its recommendation to, among other things, disbar Monique D. McLaughlin, Esq. For the reasons that follow, we deny the petition as to the request for disbarment, and instead impose a 12 month suspension.

## I. BACKGROUND

On June 24, 1999, Dale W. Hensley, an attorney employed by the North Carolina law firm of Royster, Cross, Currin & Winfrey LLP ("the Royster firm"), filed a grievance with the EGC. In his grievance, Hensley stated that his firm had hired the Parson & McLaughlin law firm — of which McLaughlin and Edward Parson were the principals — to act as local counsel in a personal injury case. To consummate the representation, the Royster firm paid $3,000 to Parson & McLaughlin; however, according to Hensley, Parson & McLaughlin had been largely non-responsive and only responded to communications three times. Hensley further stated that his firm dismissed Parson & McLaughlin as counsel on May 7, 1999, and demanded the unearned portion of the $3,000 retainer. However, despite repeated requests for a refund, the Parson & McLaughlin firm never returned any portion of the retainer nor responded to any of the Royster firm's communications.

The EGC notified McLaughlin and Parson of the grievance on July 21, 1999, and on July 30, 1999, the case investigator assigned to the matter requested a written response from both attorneys. When neither Parson nor McLaughlin submitted an answer, the case investigator, in a November 9, 1999 letter, extended the deadline for them to file an answer.

McLaughlin responded to the grievance by the extended deadline through a December 7, 1999 letter. First, McLaughlin stated that Parson

231

had no dealings with the Royster firm and recommended that he should be dismissed from the matter. As to the substantive allegations in Hensley's grievance, McLaughlin explained that the firm had retained her to investigate potential causes of action against a taxi driver and a taxi association arising from an injury to Henry Clayton — a cruise ship passenger — apparently stemming from an overloaded vehicle. According to McLaughlin, she researched the matter and sent correspondence to the Royster firm on January 15, 1999 — which she provided to the case investigator along with her answer — and never heard anything from the law firm until she received the grievance. McLaughlin concluded the letter by stating that she believed the grievance had been filed as a result of a miscommunication, and stated that she was prepared to return the full $3,000 retainer to settle the grievance.

On May 8, 2001, the case investigator again wrote to both McLaughlin and Parson. In his letter, the case investigator stated that Drew Davis — another attorney employed by the Royster firm — had repeatedly called about the status of the grievance, and had stated that the firm had accepted McLaughlin's offer to receive a full refund of the $3,000 retainer in exchange for withdrawal of the grievance. The case investigator stated that he repeatedly attempted to call both McLaughlin and Parson to convey that the Royster firm had accepted McLaughlin's offer, but that they never answered the phone nor responded to his multiple voice mails. The letter concluded by establishing a May 14, 2001 deadline for McLaughlin and Parson to respond to the Royster firm's acceptance of McLaughlin's settlement offer.

When no response was received from either attorney, the case investigator attempted to hand deliver the letter on May 9, 2001, but was unsuccessful. That same day, the case investigator sent another letter to the Parson & McLaughlin law firm by certified mail, which stated that their law office had been closed when hand delivery was attempted and that their landlord said that they were not around very often. However, on May 29, 2001, the United States Postal Service returned the letter as being "unclaimed" despite attempts at delivery on May 14, 2001, and May 22, 2001.

On December 31, 2002, the Royster firm responded to McLaughlin's answer. In its response, the Royster firm alleged the document attached to McLaughlin's answer, which she represented had been mailed on January

15, 1999, was not genuine and had actually been drafted by her after the grievance had been filed. The EGC issued a Notice of Hearing on January 28, 2003, which charged both McLaughlin and Parson with violating Rules 1.3 (diligence), 1.4 (communication), 1.5 (fees), 8.1(b) (failure to respond to demand for information from a disciplinary authority), and 8.4(c) (dishonest conduct) of the Model Rules of Professional Conduct. In addition, McLaughlin was charged with violating Model Rule 8.1(a) (false statements to disciplinary authorities).

The panel held its hearing on February 15, 2003, which neither McLaughlin nor Parson attended. At the outset of the hearing, the panel chair summarized, on the record, the numerous attempts at serving both McLaughlin and Parson over the past several years, including the EGC's efforts at serving them with the January 28, 2003 Notice of Hearing. Specifically, the panel chair explained that the Notice of Hearing had been mailed to the respondents' last known law firm address as well as the addresses listed in the Virgin Islands Bar Association's membership directory, and had been faxed to the fax number listed in that same directory. In addition, the panel chair explained that the Executive Director of the Virgin Islands Bar Association had also been contacted to verify that no other addresses or numbers had been provided for either McLaughlin or Parson, or for their firm.

Notwithstanding the respondents' default, the panel heard testimony from Clayton and Davis, as well as T.S. Royster, the principal of the Royster firm. In addition, the case investigator introduced into evidence numerous letters that the Royster firm and McLaughlin exchanged during the pertinent time period. At the hearing, Royster reiterated that the purported January 15, 1999 correspondence had never been received by his law firm, and maintained his belief that it had been prepared after the fact as part of an attempt to defend against the grievance.

The members of the panel signed a written disposition form and Memorandum of Decision later that same day. In its decision, the panel dismissed all charges against Parson, but concluded that McLaughlin violated Model Rules 1.3, 1.4, 1.5, 8.1(a), 8.1(b), and 8.4(c), and recommended her disbarment. However, for inexplicable reasons, the panel's decision was apparently never executed by the then-chair or served on the respondents until more than ten years later, when the current EGC chair executed and served the decision on July 29, 2013.

The EGC, through its Chair, filed the instant petition for disciplinary action on October 25, 2013, which requests that this Court accept the panel's recommended sanction of disbarment. This Court, in an October 28, 2013 Order, directed McLaughlin to respond to the petition on or before November 18, 2013. Because McLaughlin never registered as a Filing User with the Virgin Islands Supreme Court Electronic Filing System, as required by Supreme Court Rule 40, this Court mailed the November 8, 2013 Order to the address listed in the Virgin Islands Bar Association's membership directory. On November 8, 2013, the United States Postal Service returned the order to this Court as "undeliverable" and "unable to forward." To date, McLaughlin has not filed an answer to the EGC's petition.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

■ ■ This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). "[T]he failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the

grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, 58 V.I. 208, 214 (V.I. 2013) (quoting *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished)) (internal quotation and punctuation marks omitted). However, even if an attorney answers a grievance, the failure to attend a scheduled hearing or to file an answer with this Court will also result in default. *See In re Eichenauer-Schoenleben*, 59 V.I. 958, 966 (V.I. 2013) (citing *Parson*, 58 V.I. at 215). Therefore, before conducting any other inquiry, this Court must determine whether McLaughlin violated Model Rule 8.1(b) by failing to appear at the February 15, 2003 hearing or to answer the petition the EGC filed with this Court. *In re Suspension of Joseph*, 56 V.I. 490, 498-99 (V.I. 2012).

## B. Ethical Violations

█ "Rule 8.1 prohibits a lawyer, in connection with a disciplinary matter, from knowingly failing to respond to a lawful demand for information from a disciplinary authority." *Brusch*, 49 V.I. at 419 (citing Model Rule 8.1(b)). Thus, "an attorney who has been 'provided [with] numerous opportunities to respond' to a grievance, yet who 'inexplicably remain[s] silent' by failing . . . to appear at the adjudicatory hearing will clearly violate Rule 8.1(b)." *Joseph*, 56 V.I. at 499 (quoting *Brusch*, 49 V.I. at 419). As this Court has previously held, an attorney who is duly served at the address on file with the Virgin Islands Bar Association, yet fails to respond, has violated Model Rule 8.1(b) notwithstanding the fact that the attorney may not have received actual notice, since the failure to provide current contact information satisfies the intent requirement. *Parson*, 58 V.I. at 214-15.

█ In this case, the record contains overwhelming evidence that McLaughlin violated Model Rule 8.1(b) through her failure to appear at the February 15, 2003 hearing. As the panel chair demonstrated at the February 15, 2003 hearing, the EGC attempted to communicate with McLaughlin numerous times over a period spanning several years, and established that it attempted to serve McLaughlin at the address she provided to the Virgin Islands Bar Association. *See* V.I.S.CT.R. 207.1.8(c) (noting that a respondent attorney "may be served by regular mail to the Respondent's address, as shown in the records of the V.I. Bar Association"); V.I.S.CT.R. 203(j) ("Service of any other papers or notices required by these rules shall be deemed to have been made if such paper

235

or notice is addressed to the respondent-attorney at his last known address."); V.I. BAR ASS'N BYLAWS § I.2[1] (mandating all members to "promptly notify the Secretary of the Virgin Islands Bar whenever they change their residence or office addresses"). This Court, like the EGC, also mailed its October 28, 2013 Order to the last address McLaughlin provided to the Virgin Islands Bar Association. Moreover, the record reflects that the EGC went beyond these minimum requirements and made numerous other attempts at service, including service by fax and hand delivery. Therefore, any failure by McLaughlin to receive actual notice of either the February 15, 2003 hearing or the proceeding in this Court "is attributable solely to [her] own failure to comply with [her] obligation to provide the Virgin Islands Bar Association with current home and business addresses." *Parson*, 58 V.I. at 215. Accordingly, we agree with the EGC that McLaughlin violated Model Rule 8.1(b) in connection with these proceedings, and thus we accept all of the factual allegations against McLaughlin as true.

██ ██ As a result of McLaughlin's default, we review the EGC's analysis of the remaining charges solely "to independently determine whether the panel correctly held that these facts constituted ethical violations." *Joseph*, 56 V.I. at 499. Accepting all of the allegations against her as true, we agree with the panel that McLaughlin violated Model Rule 1.3 — diligence — by failing to perform the work she had been retained to do in a timely manner and violated Model Rule 1.4 through her failure to respond to the Royster firm's numerous requests for information as to the status of her work and its request for a refund. Likewise, we agree that the $3,000 fee charged is unreasonable in violation of Model Rule 1.5 in light of the allegation — again, which we must accept as true — that McLaughlin did not perform any work, yet retained the $3,000 in its entirety. Moreover, we agree that McLaughlin's failure to return, or place in an escrow, any portion of the $3,000 retainer constitutes a violation of Model Rule 8.4(c), in that her decision to retain the $3,000 in its entirety, notwithstanding her knowledge — as demonstrated by her December 7, 1999 answer — that the fee was in dispute essentially constituted conversion of those funds. *Parson*, 58 V.I. at 216 (citing *Brusch*, 49 V.I. at 420-21).

---

[1] The Bylaws of the Virgin Islands Bar Association are set out as a part of Supreme Court Rule 205.

236

■ ■ We disagree, however, with the EGC's conclusion that McLaughlin violated Model Rule 8.1(a), which prohibits *knowingly* making a false statement of fact in connection with a disciplinary proceeding. The EGC based its decision on a finding that McLaughlin had never drafted the January 15, 1999 correspondence she attached to her answer, but generated the document afterwards for the sole purpose of defending against the grievance. The panel based this finding on testimony of members of the Royster firm at the February 15, 2003 hearing, where they denied ever receiving the January 15, 1999 correspondence and stated that they believed McLaughlin had actually drafted the document at a later date, after the grievance had been filed. However, other than their own speculation, the record is devoid of any evidence — direct or circumstantial — that would support a finding that McLaughlin deliberately fabricated the document, as opposed to drafting the document and then simply neglecting to actually send it to the Royster firm.

■ We recognize, of course, that as a result of her violation of Model Rule 8.1(b), we are compelled to accept all factual allegations against McLaughlin as true. This Court has never held, however, that a respondent's default requires us or the EGC to accept as true naked speculation that is couched in the form of factual allegations. *Cf. Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-50 (V.I. 2011) (noting, in context of motion to dismiss for failure to state a claim, that legal conclusions and similar assertions pled as "factual allegations" do not receive "the assumption of truth"). Therefore, while we accept as true the claim that the Royster firm never received the January 15, 1999 correspondence, we cannot infer from that fact, standing alone, that McLaughlin knowingly fabricated this correspondence at some later date in an attempt to defend against the grievance. Consequently, we find, on the record presented, that there is insufficient evidence to establish, by the clear and convincing standard, that McLaughlin violated Model Rule 8.1(a).

## C. Sanctions

■ Because the EGC correctly concluded that McLaughlin violated Model Rules 1.3, 1.4, 1.5, 8.1(b), and 8.4(c), we now determine whether to accept its recommended sanction of disbarment. To ascertain the proper sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury

237

caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, we must be "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

Unfortunately, the panel failed to perform this analysis on the record; rather, in its analysis of sanctions, the Memorandum of Decision simply states that the panel agrees that McLaughlin should be disbarred. Ordinarily, this Court would remand this matter to the EGC so that it may apply the ABA Standards in the first instance. *In re Suspension of Welcome*, 58 V.I. 236, 259 (V.I. 2013). However, unlike the circumstances prevailing in the *Welcome* case, we note that more than a decade has lapsed since the date the panel deliberated this matter and drafted its Memorandum of Decision, and take judicial notice that not all members of the panel remain members of the EGC, as it is currently constituted. Therefore, rather than remanding this case to the EGC, we shall, to further the interests of judicial economy in this extraordinary circumstance, analyze the *Brusch* factors in the first instance.

 As we have repeatedly emphasized, the ethical duties that McLaughlin breached are among the most important that a lawyer owes to a client. *See, e.g., In re Suspension of Welcome*, 58 V.I. 604, 611-12 (V.I. 2013) (citing *Joseph*, 56 V.I. at 505); *In re Suspension of Rogers*, S. Ct. Civ. No. 2012-0042, 2012 V.I. Supreme LEXIS 79, at *16 (V.I. Oct. 26, 2012) (unpublished). Although some of the ethical violations — such as McLaughlin's failure to timely submit status reports requested by the Royster firm or to respond to its communications — might reflect a neglectful mental state, we note that McLaughlin's failure to refund any portion of the $3,000 retainer was knowing and intentional, given that in her December 21, 1999 answer she acknowledged that the Royster firm believed the $3,000 had not been earned and demanded a refund, yet still

retained the funds in their entirety. While McLaughlin did offer to return the $3,000, she made her offer contingent on the Royster firm withdrawing its grievance, and even if she believed the $3,000 had been fully earned, she was still required to provide the Royster firm with an accounting of how it was spent, which was never done. Furthermore, the Royster firm suffered an actual injury, in that no portion of the $3,000 retainer has ever been returned, and Clayton may have been potentially injured since McLaughlin's failure to provide the requested research on Virgin Islands law may have impaired the Royster firm's settlement negotiations with the taxi association, who settled the personal injury claim — which involved the complete loss of Clayton's left arm— for only $10,000. When considering similar circumstances — an intentional violation of an important duty resulting in an actual or potential injury to a client — this Court has repeatedly identified a six-month suspension from the practice of law as the appropriate baseline sanction. *See Welcome*, 58 V.I. at 611-13 (collecting cases).

Having ascertained the baseline sanction, we now consider the presence of any aggravating or mitigating factors, and whether they warrant an upward or downward departure. McLaughlin's violation of Model Rule 8.1(b), in addition to constituting an independent ethical violation, also serves as an aggravating factor. *Parson*, 58 V.I. at 217. Moreover, since McLaughlin failed to appear at the February 15, 2003 hearing, the record contains no evidence of any mitigating factors. Additionally, the record reflects additional aggravating factors, including a dishonest motive and multiple instances of ethical misconduct spanning a lengthy period of time. Under these circumstances, we conclude that an upward departure from the baseline sanction is warranted, in the form of a 12 month suspension from the practice of law, along with payment of $3,000 in restitution along with accrued interest.

## III. CONCLUSION

For the foregoing reasons, we suspend McLaughlin from the practice of law for 12 months, with the 12 month period beginning to run 15 days from the date of this decision, *see* V.I.S.CT.R. 207.5.5(a), and order her to pay $3,000 to the Royster firm along with accrued pre-and post-judgment interest. Upon expiration of the 12 month suspension, McLaughlin may petition for reinstatement in accordance with Supreme Court Rule 203(h).