**IN THE MATTER OF THE SUSPENSION OF B. PATRICIA WELCOME, ESQUIRE, As A Member of the Virgin Islands Bar.**

S. Ct. Civ. No. 2012-0094

Supreme Court of the Virgin Islands

February 26, 2013

236

237

238

239

GERTRUDE LECOINTE, ESQ., St. Croix, USVI, *Attorney for B. Patricia Welcome, Esq.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for V.I. Bar Ass'n Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(February 26, 2013)

· PER CURIAM. This matter comes before the Court pursuant to the September 14, 2012 notice of appeal and October 1, 2012 brief filed by B. Patricia Welcome, Esq., both requesting that we reject an August 2, 2012 disposition of the Ethics and Grievance Committee of the Virgin Islands Bar Association ("EGC"), as well as the EGC's October 15, 2012 response, which asks us to adopt its recommendations. In its disposition, the EGC finds that Welcome violated numerous ethical rules, and recommends that this Court, among other remedies, suspend her from the practice of law for one month. For the reasons that follow, we adopt in part and reject in part the EGC's recommendation as to the ethical violations, and remand the matter to the EGC so that it may, in light of our decision, recommend and sufficiently justify a new sanction.

## I. BACKGROUND

Lucille Richardson filed a grievance against Welcome with the EGC on December 23, 2003. In her grievance, Richardson stated that on December 19, 2002, her husband, through his attorney, served her with a petition for divorce along with a request for waiver of service and consent to the divorce. Richardson chose to contest the divorce, and prepared and

filed a *pro se* answer with the Superior Court of the Virgin Islands,[1] which, among other things, requested distribution of real and personal property and asserted a claim for alimony. However, after she received a March 5, 2003 letter from her husband's attorney informing her that the Superior Court had set the matter for mediation, Richardson chose to hire an attorney in lieu of proceeding *pro se*. Her daughter, Laura Severin, contacted Welcome on her behalf. In April 2003, Welcome spoke with Richardson on the telephone, informed her that she would require a $1,000.00 retainer, and asked that she provide her with copies of all documents relating to the divorce action. During the conversation, Richardson informed her that she no longer resided with her husband.

Welcome again spoke with Richardson on May 5, 2003, after she received the retainer, and again asked about her relationship with her husband. During this conversation, Richardson informed Welcome that she "was told by the Court to leave [her] husband's home . . . after an incident there in which [she] was beaten and had to go to the hospital," that her husband was not faithful during their marriage and would often leave her at home alone "while he went out with his girlfriend," and that they owned real property in both of their names. (J.A. 150.) On May 7, 2003, Welcome entered her appearance in the divorce case on behalf of Richardson.

When Richardson did not hear from Welcome for more than a month, she made several unsuccessful attempts to contact her over the telephone, but when she ultimately reached her was told that she would send her a letter. After another month went by without receiving a letter, Richardson repeatedly called Welcome and was never able to speak with anyone in her office until September 2003, when Welcome personally answered the phone and told her that she had not sent her the letter but would send it soon.

On December 12, 2003, Richardson received a letter from Welcome, which was dated December 1, 2003. However, the correspondence also included copies of a May 16, 2003 letter from her husband's attorney — asserting that Richardson possessed no claim for alimony or distribution of real property and "that mediation will be a waste of time and money,"

---

[1] At all pertinent points, prior to January 1, 2005, the Superior Court of the Virgin Islands had been known as the Territorial Court of the Virgin Islands. Nevertheless, for convenience we refer to the former Territorial Court as the Superior Court.

(J.A. 163-64), as well as a July 14, 2003 Divorce Decree, which granted the divorce petition, found that the parties possessed no property that required distribution, and stated that the parties had waived the issue of alimony. (J.A. 169.) In her letter, Welcome informed Richardson that "the law in the Virgin Islands would not support [her] claim for alimony," and requested that she review the May 16, 2003 letter and provide her with "written comments" as to the real property allegations, and let her know if she "wish[es] to pursue in court [her] interest in [the property]." (J.A. 162.) Richardson concluded her grievance by alleging that this was the very first time she obtained notice of either the May 16, 2003 letter or the July 14, 2003 Divorce Decree.

On the same day she filed her grievance — December 23, 2003 — Welcome sent another letter to Richardson. In that letter, which Richardson received on December 30, 2003, Welcome wrote that she "ha[d] no choice but to seek the Court's permission to withdraw from [her] case," provided an itemized list of services rendered and expenses incurred, and refunded the remainder of the retainer, which amounted to $701.84. That itemized list reflected that Welcome spent 0.10 hours reviewing a motion for summary judgment on May 25, 2003, but did not draft a response or perform any other work on Richardson's behalf after that date. (J.A. 183.) On December 30, 2003, Welcome and Richardson executed a stipulation for substitution of counsel, which was apparently filed with the Superior Court shortly thereafter.

After receiving Richardson's grievance, the EGC docketed the matter and informed Welcome that it had been filed. In a January 9, 2004 letter, Welcome notified the EGC's Chair that she had not seen a copy of the grievance, but provided copies of the December 1, 2003 and December 23, 2003 letters, the December 30, 2003 stipulation, and the itemized list of services rendered. For reasons not clear from the record, the matter remained dormant until July 26, 2011, when Disciplinary Counsel — who, effective July 1, 2011, assumed all ministerial, investigative, and prosecutorial duties with respect to all new and pending grievances[2] — sent Welcome a letter noting that she had previously indicated that she had not received a copy of the grievance, and requested that she file a written response within 30 days. (J.A. 186.) Disciplinary Counsel also

---

[2] *See In re Rogers*, 56 V.I. 618, 622 (V.I. 2012).

242

provided Welcome with a copy of the grievance as well as her prior January 9, 2004 letter to the Chair. On July 27, 2011, Welcome sent Disciplinary Counsel an email stating that "neither this client nor the grievance comes to mind," but promising that she "will review [her] client listing and [her] ethics case files" and "be in touch next week." (J.A. 187.) When both Welcome's self-imposed deadline and Disciplinary Counsel's initial 30 day deadline both lapsed, Disciplinary Counsel replied to Welcome's email on August 30, 2011, which reminded her that a response was outstanding and asked her if she needed additional time to respond. (J.A. 188.) On September 27, 2011, Disciplinary Counsel called Welcome and urged her to file a response even though the time for doing so had already expired. Finally, on October 3, 2011, the Chair of the EGC again formally transmitted the grievance to Welcome and advised her of the need to respond within 30 days. (J.A. 198-99.) Nevertheless, Welcome still failed to respond to the grievance.

On February 15, 2012, the EGC issued a Notice of Hearing, which advised Welcome that, "due to the gravity of the allegations," it would conduct a hearing to determine if Welcome violated Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), 1.4(a)(4), and 8.1(b) of the American Bar Association's Model Rules of Professional Conduct.[3] (J.A. 192-93.) At the April 13, 2012 hearing, Richardson and Severin both testified to largely the same material facts set forth in Richardson's initial grievance, while Disciplinary Counsel introduced numerous documents — including the pertinent letters and Superior Court orders — into evidence.

After Disciplinary Counsel rested her case, Welcome testified in her own defense. On direct examination, Welcome testified that she had spoken to Richardson more times than reflected in the statement of services rendered, but that she "does not log every call" and "didn't bill for every single conversation," and could not produce her "copious notes" of the conversations because her copy of the case file had "been lost or destroyed." (J.A. 87-88.) Welcome also confirmed that, when she retained her, Richardson had provided her with a copy of the divorce petition, her *pro se* answer, and the Superior Court's mediation order, (J.A. 88-89), and claimed that she had explained to Richardson that she had no claim to alimony because "she had been away from her husband from 1996 to

---

[3] The ABA Model Rules are applicable to Virgin Islands attorneys pursuant to Supreme Court Rule 203(a).

2003" and "did not receive any support from him" during that period, but that she might have a potential equitable claim on the property they resided at while they were married. (J.A. 89-90.) Welcome further testified that she had a "lengthy discussion" about the issues with Richardson on May 20, 2003, but that Richardson stated that she had to have a discussion with her children first before reaching a decision. (J.A. 92.) According to Welcome, she never heard from Richardson again, and therefore did not proceed with the scheduled mediation. (J.A. 92-93.) Welcome admitted that she was served with a motion for summary judgment in the matter on May 25, 2003, but believed it was "a tactical move . . . to fine tune the issues for mediation," and so "didn't respond because [she] knew within two days [they] were going to go to mediation." (J.A. 93.) Once mediation did not occur, Welcome stated that she did not respond to the motion because she "didn't feel that there was a meritorious[] claim . . . that I could use to respond" and did not believe she could object to summary judgment due to Richardson's failure to communicate with her. (J.A. 94, 98.) Welcome, however, conceded that she never notified Richardson of the motion for summary judgment, but justified that decision on the grounds that "Richardson was out of touch with [her]." (J.A. 99.) Nevertheless, Welcome admitted that "at a minimum I perhaps should have sent her the motion and said, here is the motion, we got to file a response." (J.A. 100.) Additionally, Welcome denied that Richardson ever told her of her husband's infidelity or that domestic violence was the reason Richardson had left her husband. (J.A. 101-02, 114.)

When asked by a member of the EGC panel if she conducted any discovery in the case, Welcome admitted that she did not due to the impending mediation and because she believed there was no basis for any alimony claim. (J.A. 106-07.) Similarly, when asked by the panel chair when she notified Richardson of the fact that the Superior Court issued the July 14, 2003 Divorce Decree, Welcome conceded that her "best recollection is that she received copies of the decree in December," (J.A. 121), and stated that she did not remember having any communications with Richardson between the end of May 2003 through early December 2003. (J.A. 122-23.) Additionally, Welcome conceded that she never moved the Superior Court for permission to withdraw as counsel, (J.A. 124), and that Richardson's claim for an equitable interest in her husband's real property was not frivolous. (J.A. 137.)

The EGC issued its memorandum of decision on August 2, 2012, which found that Welcome violated Model Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), 1.4(a)(4), and 8.1(b). After identifying several aggravating factors, the EGC recommended that Welcome be suspended from the practice of law for one month, pay costs of $982.50 to the Virgin Islands Bar Association, and be removed as a member of the EGC. Welcome timely filed her notice of appeal on September 14, 2012, *see* V.I.S.CT.R. 207.4.11(b), and this Court established briefing deadlines in a September 17, 2012 Order.

## II. DISCUSSION

### A. Jurisdiction and Legal Standard

This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit 4, § 32(e). As we have previously outlined,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to [suspend or] disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respondent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). Nevertheless, pursuant to both this Court's rules and the rules that

were in effect at the time Richardson filed her grievance,[4] the "[f]ailure to timely answer [a] grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *See In re Drew*, S.Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished) (quoting V.I.S.CT.R. 207.1.11). Therefore, before conducting any other inquiry, we must first determine whether Welcome violated that rule. *See In re Suspension of Joseph*, 56 V.I. 490, 498-99 (V.I. 2012).

## B. Model Rule 8.1(b)

■ "Rule 8.1 prohibits a lawyer, in connection with a disciplinary matter, from knowingly failing to respond to a lawful demand for information from a disciplinary authority." *Brusch*, 49 V.I. at 419 (citing Model Rule 8.1(b)). Thus, "an attorney who has been 'provided [with] numerous opportunities to respond' to a grievance, yet who 'inexplicably remain[s] silent' by failing to respond to the grievance or to appear at the adjudicatory hearing will clearly violate Rule 8.1(b)." *In re Joseph*, 56 V.I. at 499 (quoting *Brusch*, 49 V.I. at 417). However, unlike the respondents in the typical cases implicating Model Rule 8.1(b), Welcome was not completely unresponsive, in that she submitted a letter to the EGC on January 9, 2004, which included her correspondence with Richardson, wrote an email to Disciplinary Counsel on July 27, 2011, and appeared and testified at the April 13, 2012 hearing. Thus, we must assess whether these acts constituted sufficient cooperation with the EGC and Disciplinary Counsel so as to warrant a finding that Welcome did not violate Model Rule 8.1(b). We hold that they do, and that the EGC erred when it held that that Welcome failed to respond to repeated lawful demands from Disciplinary Counsel and the EGC.

---

[4] As this Court has previously explained,

> Former Superior Court Rules 301, 303, 304, 305, 306, and 307 have been adopted and amended by the Supreme Court as Supreme Court Rules 201, 203, 204, 205, 206, and 207, respectively. *See* Promulgation Order No. 2007-0011. Inasmuch as the language of the former Superior Court Rules has been adopted, virtually verbatim, as part of the new Supreme Court Rules, our citations in this Opinion will be to the Supreme Court Rules. Rule 207 consists of the Rules of the Ethics and Grievance Committee.

*Brusch*, 49 V.I. at 412 n.2. "Moreover, Supreme Court Rule 207 is modeled after the Model Rules of Disciplinary Enforcement, which had been previously applicable through former Superior Court Rule 303(a)." *In re Suspension of Joseph*, 56 V.I. 490, 498 n.4 (V.I. 2012) (citing *Brusch*, 49 V.I. at 412 n.4).

■■ First, we emphasize that our rules clearly contemplate that an attorney may violate Model Rule 8.1(b) by failing to timely file an answer, even if the attorney subsequently participates in the disciplinary proceedings. *See* V.I.S.CT.R. 207.1.11 ("Failure to timely answer the grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis."); V.I.S.CT.R. 207.3.1(a)(4) ("If the Disciplinary Counsel has charged the Respondent with a violation of Model Rule 8.1(b), the facts relevant to such charge shall be separately set forth [in the Notice of Hearing], and Rule 8.1(b) shall be separately cited as being implicated."). We also agree with the appellate courts in other jurisdictions that have interpreted Model Rule 8.1(b) as requiring *meaningful* cooperation, and have found the rule to be violated notwithstanding the filing of incomplete answers or requests for extensions of time, responses sent to other parties but not to the disciplinary board itself, and appearances at some — but not all — of the scheduled hearings. *See, e.g., State ex rel. Oklahoma Bar Ass'n v. Cox,* 257 P.3d 1005, 1008 (Okla. 2011); *Cleveland Metro. Bar Ass'n v. Hildebrand,* 127 Ohio St. 3d 304, 939 N.E.2d 823, 827 (2010); *In re Basiago,* 660 N.W.2d 124, 125 (Minn. 2003); *In re Williams,* 764 N.E.2d 613, 616-17 (Ind. 2002).

■ But this is not a case where an attorney completely failed to file an answer, or filed an incomplete or non-responsive answer. We agree with Welcome that her January 9, 2004 letter — which was filed before the time to file an answer even began to run, given the EGC's failure to serve her until nearly eight years later — constituted "a written response to the Grievance filed against her." (Appellant Br. 1.) Although Welcome's letter also stated that she had not seen the grievance and was unaware of the specific allegations against her, the documents she enclosed with the letter — including her December 12, 2003 letter to Richardson — were nevertheless sufficient to place the EGC on notice of her defense to the allegations. Disciplinary Counsel, after inheriting the matter from the prior case investigator, clearly possessed the discretion to provide Welcome with an opportunity to file a supplemental answer, given the significant passage of time, and Welcome's claim to have not previously seen the grievance. Likewise, the far better practice would have been for Welcome to simply inform Disciplinary Counsel that she believed her initial January 9, 2004 letter constituted a sufficient response and that a

supplemental answer would not be forthcoming, especially since she claimed to have no recollection of the case. Nevertheless, we can find no basis for holding that an attorney violates Model Rule 8.1(b), and should be found in default, simply for failing to supplement a previously filed answer, particularly when Disciplinary Counsel never moved to strike the answer from the record as non-responsive or as having been prematurely filed. Therefore, we reject the EGC's finding that Welcome violated Model Rule 8.1(b),[5] and will consequently not proceed as if Welcome is in default.

## C. Remaining Ethical Violations

■ Since Welcome did not violate Model Rule 8.1(b) and, consequently, is not in default, we do not proceed as if all of the factual allegations set forth in Richardson's grievance are true, but instead independently review and weigh the evidence and determine if the facts, as found by this Court, constitute clear and convincing evidence that Welcome committed professional misconduct. *Brusch*, 49 V.I. at 412. We agree with the EGC that Welcome violated Model Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), and 1.4(a)(4). Given the factual overlap of the charges and Welcome's defenses, we address all five rules together.

■ Model Rule 1.1 mandates that "[a] lawyer shall provide competent representation to a client," with "[c]ompetent representation requir[ing] the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Pursuant to Model Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Similarly, Model Rule 1.4 requires that a lawyer "promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required," "keep the client reasonably informed about the status of the matter," and "promptly comply with reasonable requests for information" from the client. ABA

---

[5] In her brief, Welcome contends that the EGC also found that she violated Model Rule 8.1(b) because she (1) requested to reschedule a deposition on two days' notice, and (2) failed to accept an offer to consent proposed by Disciplinary Counsel. However, both the February 15, 2012 Notice of Hearing and the August 2, 2012 disposition identify Welcome's failure to substantively respond to Disciplinary Counsel's July 26, 2011 correspondence — which requested her to file an answer to the grievance — as the basis for the Rule 8.1(b) charge, (J.A. 8, 190), and we can find absolutely no evidence whatsoever in the record that either event played any role in the EGC's decision.

Model Rules of Professional Conduct R. 1.4(a)(1), (3)-(4). In its August 2, 2012 disposition, the EGC found that Welcome violated these provisions "because [she] did not take any steps to advance her client's interests in the contested divorce and did not respond to a Motion for Summary Judgment despite the fact that it was contrary to the Answer submitted by [Richardson] in several key respects," and through her repeated failure to (1) consult with Richardson prior to making important substantive decisions, such as waiving alimony and essentially not contesting any aspect of the divorce; (2) advise Richardson, in a timely manner, of critical developments in her case, such as not informing her of the July 14, 2003 Divorce Decree until December 2003; and (3) respond, in a meaningful way, to Richardson's attempts to obtain information from her about the progress of her case. (J.A. 8.)

■ As noted earlier, it is undisputed that Welcome failed to respond to the summary judgment motion, and it is well established that the complete failure to file any response whatsoever to a dispositive motion represents perhaps the quintessential Rule 1.1 violation. *See, e.g., Lorain County Bar Ass'n v. Stuart*, 135 Ohio St. 3d 117, 984 N.E.2d 1041 (2012); *In re Carter*, 11 A.3d 1219, 1222-23 (D.C. 2011); *Ligon v. McCullough*, 303 S.W.3d 78, 81-82 (Ark. 2009); *In re Conner*, 158 N.H. 299, 965 A.2d 1130, 1133 (2009). Welcome, however, justifies her failure to respond because Richardson's claim for alimony was frivolous and that "it would have been unethical for her to pursue a frivolous claim in the divorce proceeding . . . knowing full well that the case law in the territory would not support such a claim." (Appellant Br. 3.)

■ ■ Although Welcome focuses primarily on Richardson's alimony claim, we note that summary judgment was also sought on (1) the divorce itself, which Richardson wished to contest, and (2) the equitable distribution claim. While Welcome contends that her failure to contest the divorce did not harm Richardson because "[t]he United States Virgin Islands is a no-fault divorce jurisdiction: parties are divorced even when one spouse objects to the divorce," (Appellant Br. 3), this is a highly misleading representation of the law — *every* plaintiff to a civil action may obtain relief over the objection of the defendant if a court finds that the plaintiff has met his or her burden of proof on the asserted claim. "No-fault divorce" does not mean that a party can dissolve a marriage at will simply by filing the appropriate document with a court; the petitioner must still present sufficient evidence "[t]hat there has been a breakdown

of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved." 16 V.I.C. § 104; *see also* BLACK'S LAW DICTIONARY 551 (9th ed. 2009) (defining a "no-fault divorce" as an action where a party must make "*a showing* of the irretrievable breakdown of the marriage or irreconcilable differences") (emphasis added). Even if Welcome believed that Richardson was highly likely — or even certain — to fail in any attempt to contest the divorce petition on the merits, it is so fundamental as to not require a citation that it is the client, and not the lawyer, that is vested with the ultimate decision of whether to settle a civil claim or hold the plaintiff to his proof at trial. *See* MODEL RULES PROF'L COND. R. 1.2, cmt. 1 ("The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client.").

Likewise, we find no legitimate reason for Welcome failing to oppose summary judgment on the equitable distribution claim. Although Welcome asserts that the July 14, 2003 Divorce Decree could have been modified at any time because "a divorce court maintains jurisdiction after final adjudication and may modify a divorce decree," (Appellant Br. 4), she fails to recognize that the Superior Court lacked plenary power to modify or set aside the denial of the equitable distribution claim after final judgment, for Superior Court Rule 89 only authorizes revision at any time of "orders and judgments as to maintenance and support or for the sequestration of assets or the appointment of receiver," while Superior Court Rule 50 permits a judge to alter a final judgment only in certain specifically enumerated circumstances, with the most liberal standard requiring — at the time — that the motion be filed within ten days.[6] *See Harvey v. Christopher*, 55 V.I. 565, 578 (V.I. 2011); *Ruiz v. Jung*, S.Ct. Civ. No. 2008-0035, 2009 V.I. Supreme LEXIS 43 (V.I. Oct. 19, 2009) (unpublished). Moreover, a complete failure to respond would prejudice Richardson in any potential appeal, since the appellate court, like the trial court, would deem the failure to respond to constitute a waiver of the right

---

[6] "Rules 59 to 61, inclusive, of the Federal Rules of Civil Procedure shall govern such applications [for Rule 50 relief]." SUPER. CT. R. 50. At the time the Superior Court issued the July 14, 2003 Divorce Decree, a motion brought pursuant to Federal Rule of Civil Procedure 59 — which sets forth the most liberal standard for setting aside a final judgment — had to be filed within ten days to be considered timely.

to controvert the facts asserted in the summary judgment motion. *See Anchorage Assocs. v. V.I. Bd. of Tax Revenue*, 922 F.2d 168, 175 (3d Cir. 1990). And in any event, Richardson could not have filed a timely notice of appeal or Rule 50 motion, since Welcome concedes that she did not inform her of the July 14, 2003 Divorce Decree until December 12, 2003, which is itself sufficient to establish violations of Model Rules 1.3, 1.4(a)(1), and 1.4(a)(3). *See, e.g., In re Suspension of Rogers*, S.Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79, at *12-13 (V.I. Oct. 26, 2012); *Drew*, 2008 V.I. Supreme LEXIS 26, at *10.

We also reject Welcome's argument that it would have been unethical for her to pursue Richardson's alimony claim. As we have previously emphasized, an argument is frivolous if and only if it "is not only against the overwhelming weight of legal authority but also entirely without any basis in law or fact or without any logic supporting a change of law." *Castillo v. People*, S.Ct. Crim. No. 2008-0072, 2010 V.I. Supreme LEXIS 39, at *6 (V.I. Jan. 27, 2010) (unpublished) (quoting *State v. Turner*, No. W1999-01516-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 248, at *5 (Tenn. Crim. App. Mar. 17, 2000) (unpublished)). First, we note that Welcome's itemized statement of services rendered reflects that she devoted a grand total of 1.40 hours to the entire matter, which is broken down as follows: 0.60 hours for phone conversations with Richardson and Severin, 0.40 hours to review the documents provided by Richardson and prepare a notice of appearance, 0.30 hours for phone conversations and other correspondence with opposing counsel, and 0.10 hours — or six minutes — to review the motion for summary judgment. (J.A. 183.) In fact, it appears that Welcome literally did not spend any time at all performing legal research with respect to Richardson's alimony and equitable distribution claims. Thus, even beyond her failure to respond to the summary judgment motion, Welcome clearly did not devote the "thoroughness and preparation reasonably necessary" to represent Richardson in the divorce matter due to her complete failure to engage in any legal research into the validity of her potential claims. *See, e.g., Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (failure of attorney to conduct even "a cursory review of the law" before determining that habeas corpus petition would have been untimely); *Attorney Grievance Comm'n v. James*, 385 Md. 637, 870 A.2d 229, 240-41 (2005) (failure to conduct "even cursory research" as to viability of potential adultery causes of action).

251

■ In light of the contents of Welcome's itemized statement of services rendered, we severely doubt that Welcome conducted any legal research or analysis into Richardson's alimony claim, let alone the research necessary to determine that it was frivolous. But in any event, Richardson's claim for alimony unquestionably does not meet this standard, for it was well established in May 2003 that alimony determinations are based on "the amount of property of each [spouse], the circumstances surrounding the parties, the wife's necessities, and the husband's financial ability, the physical condition of the parties, the nature of their life together, and in these modern times the wife's independence and ability to earn her own way." *Feddersen v. Feddersen*, 68 F. Supp. 2d 585, 595, 41 V.I. 230 (D.V.I. App. Div. 1999). Thus, Richardon's six year separation from her husband would be one of many factors that the Superior Court would have considered, and would not have — without more — been dispositive. The record contains no evidence that Welcome inquired into how Richardson was able to support herself after separating from her husband, i.e., whether Richardson was only able to support herself due to public assistance or gratuitous aid from relatives, or whether Richardon's independent earning capacity had been reduced as a result of relying on her husband for support during their marriage.

Moreover, contrary to her testimony at the April 13, 2012 hearing, Welcome was clearly aware that Richardson had accused her husband of domestic violence immediately prior to their separation, since the May 16, 2003 letter from opposing counsel explicitly stated that "Ms. Richardson abandoned the marriage in 1996 when she moved out of the martial home and moved permanently to the stateside," but "[b]efore she did, she filed a domestic violence claim against Mr. Richardson." (J.A. 164.) As Welcome appeared to recognize when she testified that she would have developed a domestic violence claim further, (J.A. 114), she clearly could have relied on the domestic violence accusation to argue for alimony or for an extension of existing law or a change in the law to allow Richardson to receive alimony notwithstanding her decision to reside separately from her husband. *Cf. Petrohan v. Petrohan*, 48 V.I. 245, 254 (V.I. Super. Ct. 2007) (holding, for purposes of equitable distribution in divorce action, that wife did not "abandon" the marital homestead when she relocated to Florida after alleged domestic abuse by husband).

■ We also reject Welcome's claim that her actions were excused by Richardson's purported failure to respond to phone calls or to attend the scheduled mediation. While Welcome testified at the hearing that she attempted to speak with Richardson numerous times but that Richardson was unresponsive, Model Rule 1.4 places an obligation on the lawyer to communicate with the client, and to notify the client of judgments and other significant events in the case. Even if Richardson did not diligently respond to communications from Welcome — which we find to be unsupported, based on the evidence in the record — her lack of communication did not excuse Welcome from her obligations under Model Rule 1.4, especially with respect to duties such as notifying Richardson of the July 14, 2003 Divorce Decree. Moreover, the January 24, 2003 Mediation Order did not require that the parties — as opposed to their counsel — personally attend the mediation, (J.A. 159-60), and, in any event, it is not clear why Welcome could not have attempted to reschedule the mediation if she believed Richardson's personal attendance was required. And to the extent any communication problems were so pervasive that she could no longer reasonably consult with Richardson by telephone, there is no explanation as to why written mail communication was not used, following which she could have filed a motion to withdraw as counsel pursuant to Model Rule 1.16.

Finally, we, like the EGC, find Welcome's claim that she had other telephone conversations with Richardson besides those listed on her itemized billing statement incredible. Although Welcome states that she did not include these alleged conversations on the billing statement because she "didn't bill for every single conversation," we note that the statement contains a non-billable entry for May 5, 2003 titled "Prepare letter to Lucille Richardson regarding defense," (J.A. 183), indicating that Welcome did, in fact, make a record of her nonbillable activities. Additionally, it is undisputed that Richardson filed her grievance with the EGC *before* Welcome provided her with the itemized billing statement, yet the conversations Richardson identifies in her grievance happen to be the very same ones reflected in the statement. And while Welcome argues that Disciplinary Counsel did not introduce any telephone records into the record, absolutely nothing prevented Welcome from requesting a subpoena duces tecum for the production of any telephone records that she believed would assist her defense. *See* V.I.S.Ct.R. 207.2.8(a) ("At any point in the Committee's proceedings, the Disciplinary Counsel may

cause to be issued . . . a subpoena duces tecum for the production of documents . . . at the request of the Grievant *or Respondent*.") (emphasis added). Accordingly, we agree with the EGC that the record contains clear and convincing evidence that Welcome violated Model Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), and 1.4(a)(4).

### D. The Recommended Sanction

In its August 2, 2012 disposition, the EGC made the following findings with respect to the sanction for Welcome's misconduct:

> In imposing discipline, this Panel must consider the ethical duty violated, the attorney's mental state, the extent of actual or potential injury caused by the attorney's misconduct, and any aggravating or mitigating factors. VISCR 207.4.1. We find that Respondent knowingly violated duties owed to her client and that her client was injured as a result. We also note that Respondent failed to comply with the (sic) Rule 207 and did not cooperate with the case investigator, has not expressed any remorse for her conduct, and has substantial experience in the practice of law. *Std's for Imposing Lawyer Sanctions* Std. 9.22. These factors are (sic) all point to the need for a serious sanction.
>
> This panel finds that suspension for a period of one month, removal from the Ethics and Grievance Committee in accordance with Rule 207, and payment of costs in the amount of $982.50 to the V.I. Bar Association are the appropriate sanctions.

(J.A. 8-9.) Since we agree with the EGC that Welcome violated Model Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), and 1.4(a)(4), but reject its holding that she violated Model Rule 8.1(b), its recommended sanction is necessarily subject to reexamination. However, for the reasons set forth below, we find that the EGC's other findings are deficient to such an extent that we remand the matter so that it may issue a new recommended sanction in the first instance.

We note that the EGC correctly held that it must "consider the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). However, the EGC must "consider[] the first three factors to initially determine the appropriate sanction," and

254

only "consider the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Therefore, the EGC must first ascertain a baseline sanction based on the first three factors, and then determine whether any upward or downward departure from the baseline sanction is warranted after consideration of the fourth factor. *See Rogers*, 2012 V.I. Supreme LEXIS 79. It is not clear if this, in fact, occurred in this case, since the EGC simply states its ultimate recommended sanction, without identifying the baseline sanction or explaining how any aggravating or mitigating factors justify an upward or downward departure. In other words, we cannot determine whether the EGC followed the procedure identified in *Brusch*, or impermissibly weighed all four factors simultaneously.

In addition to the uncertainty as to whether it applied the correct test, the EGC has not sufficiently explained the reasons for its recommended sanction. In its disposition, the EGC identifies as the governing provision ABA Standard 9.22 — which provides for a baseline sanction of a six month suspension if "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client" — and states that Welcome "knowingly violated duties owed to her client and that her client was injured as a result" and proceeded to identify three aggravating factors. Nevertheless, the EGC then proceeds to recommend that Welcome be suspended from the practice of law for one month.

Questions also exist about other aspects of the proposed sanction. As Welcome correctly notes in her brief, this Court, in a March 16, 2012 Order, granted her request to resign from the EGC. *See In re Welcome*, S.Ct. BA. No. 2012-0057, slip op. at 1 (V.I. Mar. 16, 2012). Yet the August 2, 2012 disposition requests that this Court remove Welcome from the EGC as a sanction for her misconduct. While Welcome contends that this renders this proposed sanction moot, the fact that the EGC clearly viewed removal as a sanction in and of itself may have impacted its analysis and caused it to recommend a one month suspension.[7] We also agree with Welcome that the EGC's disposition is lacking in that it

---

[7] Since Welcome had voluntarily resigned from the EGC well before the April 13, 2012 hearing — let alone before issuance of the August 2, 2012 disposition — it is not necessary for us to decide, as part of this case, whether removal from the EGC is a sanction that may be permissibly ordered or recommended by the EGC as part of an attorney discipline proceeding. *Compare* V.I.S.CT.R. 207.4.3(b) (listing the sanctions that may be imposed by the EGC and this Court, which does not include removal from membership on the EGC) *with*

explicitly finds that Richardson "was injured" — language which implies an actual, and not potential, injury[8] — yet does not identify with specificity the actual injury Richardson suffered.[9] Importantly, if the EGC believed Richardson suffered an actual injury, it is not clear why it did not order restitution as part of its recommended sanction.[10] Moreover, there is absolutely no support for the $982.50 cost award, since the August 2, 2012 disposition contains no factual findings as to what expenses the EGC incurred and the EGC has not filed an itemized bill of costs with this Court. And while we do not believe the particular cases she cites are apposite, we share Welcome's concern that the EGC did not consider how other Virgin Islands attorneys have been disciplined for violations of the same ethical rules.[11]

---

V.I.S.CT.R. 207.6.11(a), 207.7.1(b)(3) (providing that attorneys who have ever been suspended or disbarred may not serve on the EGC).

[8] In its disposition, the EGC states that Richardson "may" have lost the right to appeal the July 14, 2003 Divorce Decree, and was denied "the opportunity to seek a more favorable distribution of assets/debts and potentially alimony." (J.A. 8.) This language, however, implies that Richardson may have only been potentially injured, whereas the EGC's finding that Richardson "was injured" implies actual injury.

[9] In her brief, Welcome further argues that Richardson suffered no actual or potential injury because allegedly "there is no evidence whatsoever that [Richardson] either filed an appeal or a motion to modify the Divorce Decree with for [sic] either alimony, real property nor [sic] personal property distribution and was denied." (Appellant Br. 4.) Our agreement with Welcome that the August 2, 2012 disposition does not sufficiently explain how Richardson was injured should not be construed as agreement with Welcome's claims that Richardson suffered no injury or that she was required to file an untimely appeal or motion to modify as a prerequisite to establishing an injury. To the extent it is necessary to do so, we will address this issue — and all other issues relating to the sanctions to be imposed — when this matter returns to this Court after the limited remand to the EGC.

[10] For instance, if the EGC believed Richardson was injured by virtue of paying nearly $300.00 for legal services rendered in an incompetent manner and which may have actually hurt her interests, it is not clear why the EGC does not believe Welcome should refund these fees as restitution.

[11] In her brief, Welcome — among other cases — cites to this Court's unpublished dispositions in *In re Logie-Moolenaar*, S.Ct. Civ. No. 2012-0045 (V.I. July 12, 2012), *In re Kiture*, S.Ct. Civ. No. 2012-0058 (V.I. July 12, 2012), and *In re Bloodman*, S.Ct. BA. No. 2009-0041 (V.I. Aug. 29, 2011). However, the *Bloodman* matter involved imposition of reciprocal discipline pursuant to Supreme Court Rule 203(c), while the *Logie-Moolenaar* and *Kiture* matters — in addition to involving substantively different misconduct, in that the primary misconduct involved failure to safekeep client property — were adjudicated through the consent discipline procedure set forth in Supreme Court Rule 207.3.14, which does not require strict compliance with the ABA Standards. Nevertheless, while each case ultimately stands on its own facts, we do believe the EGC should be guided by *Joseph, Rogers, Drew,*

 Last, but not certainly not least, we are not convinced that the EGC was "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Brusch*, 49 V.I. at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1). As noted above, we simply do not know how the EGC arrived at its conclusion that a one month suspension represented the appropriate sanction for Welcome's misconduct. But regardless of how the EGC reached its decision, the ABA Standards establish a presumption against imposing an extremely short suspension as a sanction for serious ethical misconduct. *See* STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 2.3 ("Generally, suspension should be for a period of time equal to or greater than six months.").

 The reasons for a presumption against short suspensions should be clear. If an attorney's ethical misconduct is sufficiently serious to warrant a suspension, a very short suspension is unlikely to protect the public and the administration of justice from that lawyer. Yet, despite its short nature, the suspension will likely have a devastating effect on the lawyer's practice and livelihood — particularly if the lawyer is a sole practitioner — since, regardless of the length of the suspension, the attorney's obligations would include (1) moving to withdraw from all pending cases, (2) securing substitute counsel for every single client, (3) notifying all clients, co-counsel, and opposing counsel of the suspension, and (4) refunding and returning all unearned retainers, money or other property held in trust, and other client property of whatever nature. *See* V.I.S.CT.R. 207.5.5(b)-(f). And if the nature of the ethical violation, and the surrounding facts and circumstances, do not justify an attorney going through this process — which may have collateral effects that last far beyond the actual suspension period — it is not clear why a public reprimand, additional training in ethics, passing the Multistate Professional Responsibility Exam, or similar remedies would not be sufficient to protect the public. In other words, a short suspension may resemble an impermissible attempt at punishing an attorney if the

---

*Brusch*, and other decisions of this Court involving violations of Model Rules 1.1, 1.3, and 1.4.

devastating effects of compliance with Rule 207.5.5 are properly balanced against the public interest furthered.[12]

For the foregoing reasons, we conclude that we are unable to effectively review any portion of the EGC's recommended sanction. It is possible that the EGC — rightly or wrongly — concluded that a six month suspension represented the baseline sanction, but found that some unspecified mitigating factors outweighed the aggravating factors and warranted a downward departure,[13] or that, for whatever reason, "good cause" existed to disregard the ABA Standards. *See* V.I.S.Ct.R. 207.4.1. For instance, the EGC may have relied on its erroneous belief that Welcome was still a member of the EGC, and concluded that including

---

[12] We emphasize that we are not establishing a categorical rule that an attorney may never be suspended for a period of less than six months for ethical misconduct; on the contrary, this Court has, on at least one occasion, authorized a suspension for a lesser period. *See Joseph*, 56 V.I. at 506. In an appropriate case, a one month suspension may certainly be warranted; for instance, if an attorney has engaged in relatively trivial ethical misconduct, but has accumulated such an extensive prior history of discipline that a public reprimand is not warranted. However, when recommending that an attorney be suspended for only a short period of time, the EGC must clearly articulate, in its memorandum of decision, precisely why it believes such a short suspension is necessary to protect the public and the administration of justice.

[13] It is also likely that the EGC may have considered the fact that the underlying grievance had been pending since late December 2003. As we noted in *Rogers*, "[t]he failure of any Adjudicatory Panel . . . to adjudicate any grievance within twelve (12) months, shall not be grounds for dismissal, mitigation of sanctions, or any other relief to any Respondent." 2012 V.I. Supreme LEXIS 79 at \*18 (quoting V.I.S.Ct.R. 207.7.7(c)). Nevertheless, while such delays — without more — do not warrant a lesser sanction, it may serve as a mitigating factor suggesting that reduction of the sanction from the baseline may be warranted if the delay results in collateral consequences, such as a reduced ability to defend against the original charges. At the hearing, Welcome testified that her case file had been "lost or destroyed," and indicated that it made it difficult for her to defend against the charge that she failed to communicate with Richardson. (J.A. 87-88.) Unlike *Rogers* — where the respondent was in default — Welcome answered the grievance, participated at the hearing, and presented a defense. If the EGC were to find that Welcome's ability to present a defense had been impaired as a result of its delay in processing the grievance — and not due to her own negligence or other fault of her own — it could permissibly consider that as a mitigating factor. *See Dayton Bar Ass'n v. Green*, 97 Ohio St. 3d 119, 776 N.E.2d 1060, 1061 (2002) ("In mitigation, the panel considered . . . that relevant records had been destroyed when [respondent's] office water pipes burst, and [respondent] apologized that she could not defend herself for this reason."). Moreover, we note that Welcome testified at the April 13, 2012 hearing to having undergone serious medical treatment (J.A. 140-41), which under some — but certainly not all — circumstances could serve as a mitigating factor if it served as a contributing factor to the misconduct. *See Drew*, 2008 V.I. Supreme LEXIS 26.

removal from the EGC as part of its sanction justified a substantially shorter period of suspension. The EGC may also have potentially concluded — again, rightly or wrongly — that a public reprimand represented the appropriate baseline sanction, with a one month suspension representing an upward departure. Or perhaps the EGC simply misapplied the law, whether by erroneously weighing the four factors identified in *Brusch* simultaneously or simply not following the ABA Standards at all. *See, e.g., Rogers*, 2012 V.I. Supreme LEXIS 79. Without a more detailed explanation from the EGC as to how it arrived at its decision, we simply do not know.

 Of course, this Court is not mandated to remand this matter to the EGC. As we have repeatedly emphasized, this Court is obligated to review the EGC's proposed sanction independently, without granting it any special deference with respect to either its factual findings or legal conclusions. Absent a deferential standard of review, nothing prevents this Court from simply performing its own analysis as part of this proceeding. *See, e.g., Drew*, 2008 V.I. Supreme LEXIS 26.

But while we possess the power to completely disregard the EGC's findings, we do not believe that it would be desirable to do so. Although we do not defer to its recommended sanction, this Court clearly benefits from the EGC's input, given that it is comprised of practicing attorneys who have been asked to adjudicate a wide range of legal ethics matters, many of which never necessitate the involvement of this Court. And in the cases that do reach this Court, we have made it a practice to always address the EGC's position and articulate the specific reasons for accepting, rejecting, or modifying its recommendations, for we have found that the very process of doing so has a positive effect on the development of legal ethics jurisprudence in the Virgin Islands — a process which we cannot employ in this case since we do not know how the EGC arrived at its decision. Accordingly, we shall remand the matter to the EGC so that it may recommend a new sanction, which must (1) take into account that Welcome did not violate Model Rule 8.1(b), and (2) address the issues we have identified herein.[14]

---

[14] Despite our holding that Welcome did not violate Model Rule 8.1(b), we are not certain whether the EGC will ultimately recommend a lesser or harsher sanction on remand, in light of the numerous other issues we have identified in this Opinion. However, because the EGC sought suspension as its original sanction, we retain jurisdiction over this matter pending the

## III. CONCLUSION

We agree with the EGC that Welcome violated Model Rules 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), and 1.4(a)(4), but cannot conclude that she violated Model Rule 8.1(b). Nevertheless, we are unable to determine whether we should accept, reject, or modify the EGC's recommended sanction. Therefore, we shall hold this matter in abeyance and remand this matter to the EGC for the limited purpose of issuing, on an expedited basis, a new proposed sanction that is accompanied by an explanation sufficiently clear as to enable meaningful review by this Court.

---

limited remand, and will review the EGC's recommended sanction even if it ultimately chooses to recommend a sanction that would ordinarily not require court approval pursuant to Supreme Court Rule 207.4.3(b).