# IN THE MATTER OF THE SUSPENSION OF B. PATRICIA WELCOME, ESQUIRE, AS A MEMBER OF THE VIRGIN ISLANDS BAR

S. Ct. Civil No. 2012-0094

Supreme Court of the Virgin Islands

June 28, 2013

606

GERTRUDE LECOINTE, ESQ., St. Croix, USVI, *Attorney for B. Patricia Welcome, Esq.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for V.I. Bar Ass'n Ethics & Grievance Committee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 28, 2013)

PER CURIAM. This case is back before the Court after we remanded the matter to the Ethics and Grievance Committee of the Virgin Islands Bar Association ("EGC") so that it may recommend and sufficiently justify a new sanction for the numerous ethical violations committed by B. Patricia Welcome, Esq. For the reasons that follow, we grant the EGC's petition, as modified.

## I. BACKGROUND

 Because our previous opinion in this matter fully set forth the history of this case prior to this Court's remand to the EGC, *see In re Suspension of Welcome*, S. Ct. Civ. No. 2012-0094, 2013 V.I. Supreme

LEXIS 6, *1 (V.I. 2013), we need only summarize the factual and procedural background directly relevant to the issues presently before us. In our February 26, 2013 Opinion, we adopted the EGC's findings that Welcome violated Model Rules of Professional Conduct 1.1, 1.3, 1.4(a)(1), 1.4(a)(3), and 1.4(a)(4)[1] with respect to her representation of Lucille Richardson, but rejected its conclusion that she violated Model Rule 8.1(b).[2] 2013 V.I. Supreme LEXIS 6 at *29. We also rejected the EGC's recommended sanction that Welcome be suspended from the practice of law for one month, be removed from the EGC, and pay $982.50 in costs. Specifically, we noted that (1) we could not determine whether the EGC properly applied the American Bar Association's Standards for Imposing Lawyer Sanctions;[3] (2) Welcome had resigned from the EGC on March 16, 2012, and that the panel may have imposed a different sanction if it had been aware of this fact; and (3) the disposition was otherwise not supported with appropriate factual findings. 2013 V.I. Supreme LEXIS 6 at *33. Consequently, this Court directed the EGC to issue, on an expedited basis, a new recommended sanction that addressed these concerns, and accounted for the fact that Welcome did not violate Model Rule 8.1(b). 2013 V.I. Supreme LEXIS 6 at *43.

The EGC issued its supplemental decision on March 13, 2013, which recommends that this Court suspend Welcome from the practice of law for eight months, order her to pay $982.50 in costs, and make restitution to Richardson in the amount of $280, plus interest from the date she was retained on April 16, 2003. The EGC notified this Court of its decision on March 14, 2013, and this Court subsequently established briefing deadlines in a March 15, 2013 Order. Welcome and the EGC filed their

---

[1] The American Bar Association's Model Rules of Professional Conduct are applicable to Virgin Islands attorneys pursuant to Supreme Court Rule 203(a).

[2] In her reply brief, Welcome requests that we reconsider our findings that she committed ethical misconduct. However, "[a]ny argument that is raised for the first time in a reply brief is considered waived, because the [opposing party] will not receive a chance to respond." *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 567-68 (V.I. 2012)). Nevertheless, since Welcome has failed to establish that this Court "overlooked or misapprehended" any "points of law or fact," V.I.S.CT.R. 31(a), we decline to revisit any aspect of our February 26, 2013 Opinion.

[3] When fashioning a sanction for an attorney's ethical misconduct, "[t]he [EGC] is guided by the American Bar Association's Standards for Imposing Lawyer Sanctions, and may only deviate from those Standards for good cause." V.I.S.CT.R. 207.4.1.

principal briefs, respectively, on April 2, 2013, and April 16, 2013, with Welcome then filing a reply brief on April 23, 2013.

## II. DISCUSSION

■ To determine the appropriate sanction for an attorney's misconduct,[4] both the EGC and this Court "consider the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *V.I. Bar v. Brusch,* 49 V.I. 409, 420 (V.I. 2008) (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). We " 'consider[] the first three factors to initially determine the appropriate sanction,' and only 'consider[] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination.' " *In re Suspension of Adams,* S. Ct. Civ. No. 2013-0013, 2013 V.I. Supreme LEXIS 15, *12 (V.I. April 11, 2013) (quoting *Brusch,* 49 V.I. at 420).

### A. The Supplemental Decision

In its March 13, 2013 supplemental decision, the EGC relied on our prior precedents to conclude that Model Rules 1.1, 1.3, and 1.4 codify among "the most important ethical duties owed by a lawyer," *In re Suspension of Joseph,* 56 V.I. 490, 505 (V.I. 2012) (citing *Brusch,* 49 V.I. at 420), and that Welcome therefore violated serious duties to Richardson. The EGC also concluded, based on her own testimony at the April 13, 2012 hearing, that Welcome acted intentionally, since she stated that she knew a motion for summary judgment had been outstanding yet "made a conscious choice not to submit any response." (Supp. Dec. 2.) As to the third factor, the EGC found that Richardson suffered an actual injury, since (1) Welcome deprived Richardson of her right to hold her husband to his proof in the divorce action, as well as her right to pursue her claim for alimony, and (2) Richardson was unaware that she was divorced between July 14, 2003, and December 12, 2003, due to Welcome's failure to notify her that the Superior Court had granted her husband's divorce petition.

---

[4] This Court possesses the exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e).

■ Based on its findings with respect to the first three factors, the EGC concluded that a six-month suspension from the practice of law constituted the appropriate baseline sanction, pursuant to ABA Standard 4.42, which provides that

> [s]uspension is generally appropriate when:
>
> (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
>
> (b) a lawyer engages in a pattern of neglect [that] causes injury or potential injury to a client.

STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Std. 4.42. The EGC then proceeded to identify three aggravating factors, including (1) that Richardson was "vulnerable" because "[s]he was a victim of domestic violence who was being divorced by her husband against her wishes at the time of the representation" and "had only elementary schooling"; (2) Welcome's lack of remorse for her conduct and failure to acknowledge any wrongdoing; and (3) that Welcome's ethical violations did not all arise from a single act or omission, but stemmed from several separate and distinct instances of misconduct. (Supp. Dec. 5-6.) As to mitigation, the EGC found two mitigating factors — absence of a dishonest or selfish motive, and timely response to the grievance — but concluded that the substantial delay in adjudicating Richardson's grievance, as well as Welcome's testimony to have suffered from an unspecified medical condition, did not serve as mitigating factors in this case. Ultimately, the EGC concluded that the mitigating and aggravating factors, once weighed, justified an eight-month suspension, together with payment of costs and restitution, including "interest from the date Welcome was retained on April 16, 2003." (Supp. Dec. 7.)

## B. The Baseline Sanction

In her principal brief, Welcome does not challenge, in more than a cursory fashion, any aspect of the EGC's analysis. Rather, Welcome devotes virtually all of her brief to comparing the facts of her case to four other attorney discipline cases: *Brusch* and *Joseph*, as well as *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26 (V.I. June 30, 2008) (unpublished), and *In re Rogers*, 56 V.I. 618 (V.I. 2012). According to Welcome, the EGC's recommend sanction is "inconsistent, arbitrary, capricious and unjust" because her ethical violations are

significantly less serious than the ones found in those matters. (Welcome Br. 2.)

■ Welcome's argument largely lacks merit. In its brief, the EGC does not dispute that Welcome committed less serious misconduct than the respondents in *Brusch* and *Drew*. However, the EGC correctly notes that this is precisely why it recommended a substantially lower sanction than the disbarment imposed in *Brusch* and the two-year suspension ordered in *Drew*. Additionally, the EGC correctly notes that this Court never reviewed the correctness of the sanction imposed in *Rogers* due to its decision to dismiss the respondent's appeal as untimely, and — in any event — that the *Rogers* matter involved completely different misconduct: violations of Model Rules 1.5, 8.1(b), and 8.4. Thus, the *Brusch*, *Drew*, and *Rogers* decisions do not support Welcome's claim that the EGC is arbitrarily or irrationally imposing disparate sanctions for similar ethical violations.

The *Joseph* case, however, is relevant to our analysis. Although that matter also involved somewhat more serious misconduct than in this case, the respondent in *Joseph* — like Welcome — committed intentional violations of Model Rules 1.1, 1.3, and 1.4 with respect to a single client matter. In that case this Court arrived at the same baseline sanction as the EGC did in its March 13, 2013 decision, applying largely the same reasoning:

> As we have previously explained, the duties set forth in Model Rules 1.1, 1.3, and 1.4 are among the most important ethical duties owed by a lawyer. Moreover, Attorney Joseph's breach of Model Rules 1.1 and 1.3 resulted in an actual injury to the [clients] in that his failure to provide competent and diligent representation resulted in dismissal of their lawsuit. Likewise, Attorney Joseph's breach of his duty to communicate with the [clients], in violation of Model Rule 1.4, prevented the [clients] from taking the steps necessary to mitigate the damage caused by Attorney Joseph's violation of Model Rules 1.1 and 1.3, such as appealing the November 3, 2000 Order. Under these circumstances — a serious ethical breach that resulted in actual injury, but only with respect to a single client matter — the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, either a suspension of no less than six months or a public reprimand, with a suspension typically appropriate if the

611

violation was knowing or intentional, and a public reprimand warranted if the lawyer was merely negligent. But, suspension is also appropriate if a lawyer engages in a pattern of neglect with respect to a single matter. In this case, while the record contains no indication that Attorney Joseph intentionally committed the underlying misconduct with respect to his representation of the [clients], all three ethical violations occurred over a period spanning several years, and thus warrant[] the higher baseline sanction of suspension.

*Joseph*, 56 V.I. at 505 (internal citations, footnote, and quotation marks omitted). Similarly, the misconduct of the respondent in *Adams* — intentional violations of Model Rule 1.3 and 1.4(a)(3), also as to a single client — is also largely similar to that committed by Welcome. And in that case, we also arrived at the same baseline sanction as the EGC:

[W]e agree with the EGC that, under the ABA Standards, a suspension is warranted. We have previously identified Model Rules 1.3 and 1.4 as among the most important ethical duties owed by a lawyer. We also agree with the EGC's finding that Adams engaged in knowing misconduct. While Adams's failure to respond to the January 3, 1997 and January 8, 1998 Orders and to notify [his client] of the September 2, 1998 Order could arguably be attributed to negligence, Adams's decision to continue to misrepresent to [his client], for several years, that his lawsuit remained pending was clearly willful and deliberate. And we agree with the EGC that the record reflects that [the client] suffered an actual injury, since Adams's failure to respond to the January 8, 1998 Order caused the Superior Court to dismiss Allen's complaint, and his failure to timely notify [his client] of the September 2, 1998 Order prevented him from re-filing his complaint within the applicable statute of limitations. Under these circumstances — a serious, intentional ethical breach that resulted in injury, but only with respect to a single client matter — the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, a six[-]month suspension.

*Adams*, 2013 V.I. Supreme LEXIS 15, *14-15. And we arrived at the same conclusion in yet another case involving intentional violations of Model Rules 1.2, 1.4, and 1.5, also as to a single client:

We agree with the [EGC] that Attorney Rogers breached some of the most important duties owed to [his client] and to the legal profession itself, that his breach was intentional, and that his actions resulted in an actual monetary loss. Under these circumstances a serious, intentional ethical breach that resulted in injury, but only with respect to a single client matter[,] the American Bar Association's Standards for Imposing Lawyer Sanctions recommend, as an initial baseline sanction, a six[-]month suspension.

*In re Suspension of Rogers*, S. Ct. Civ. No. 2012-0059, 2012 V.I. Supreme LEXIS 79, *17 (V.I. Oct. 26, 2012) (unpublished).

Of course, this Court ultimately imposed different sanctions in each of these cases, with suspensions ranging from three to six months, in addition to various collateral sanctions, such as public reprimands, completion of continuing legal education credits, and payments of costs and restitution. This Court arrived at these divergent results after completing the next step of the analysis: identifying the aggravating and mitigating factors and then determining whether they justified adjusting the baseline sanction upwards or downwards. In each and every case, however, the baseline sanction remained the same: a six-month suspension. Consequently, we find no error with respect to the EGC's analysis of the first three factors.

## C. Aggravating and Mitigating Factors

■ But while we agree with the EGC that a six-month suspension represents the correct baseline sanction, we find that it erred with respect to its consideration of aggravating and mitigating factors. As noted above, Welcome devotes the overwhelming majority of her principal and reply briefs to comparing her case to *Brusch*, *Drew*, *Joseph*, and *Rogers*, and thus addresses the EGC's actual findings in a highly cursory manner.[5]

---

[5] For instance, in her principal brief, Welcome states, in a single sentence, that the EGC failed to consider her cooperation as a potential mitigating factor; however, as noted above, the March 13, 2013 supplemental decision explicitly states that the EGC concluded that Welcome's timely filing of a response to Richardson's grievance constituted a mitigating factor. (Supp. Dec. 7.) While Welcome also contends that the EGC should have considered, in mitigation, the fact that she "did not use her position on the [EGC] to influence or obstruct the speedy adjudication of this matter," (Welcome Br. 7), she fails to cite to any legal authority to support for the proposition that her failure to abuse her power while serving on the EGC

Nevertheless, we have repeatedly emphasized that traditional waiver principles do not apply to attorney discipline proceedings: "Our review . . . is virtually *de novo*," and we must independently "decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted." *Brusch*, 49 V.I. at 412. Therefore, this Court has not just the discretion, but the duty, to look beyond the arguments made in Welcome's briefs and determine whether the EGC's findings possess adequate support in the record. Exercising this independent review, we conclude that it committed several errors with respect to its consideration of aggravating and mitigating factors.

### 1. Mitigating Factors

■ ■ We agree with the EGC that Welcome's cooperation with disciplinary authorities, as well as her absence of a dishonest or selfish motive, are clearly mitigating factors. However, we believe the EGC erred when it held that the substantial delay in adjudicating Richardson's grievance did not also constitute a mitigating factor. It is correct that, as a general rule, "[t]he failure of [the EGC] . . . to adjudicate any grievance within twelve (12) months[] shall not be grounds for dismissal, mitigation or sanctions, or any other relief to any Respondent." *Rogers*, 2012 V.I. Supreme LEXIS 79 at *18 (quoting V.I.S.Ct.R. 207.7.7(c)). Nevertheless, in our February 26, 2013 Opinion in this very matter, we agreed with courts in other jurisdictions that have established a narrow exception to this principle in cases where the respondent may demonstrate that his or her ability to present a defense has been impaired by the EGC's delay:

> At the hearing, Welcome testified that her case file had been "lost or destroyed," and indicated that it made it difficult for her to defend against the charge that she failed to communicate with Richardson. (J.A. 87-88.) Unlike *Rogers* — where the respondent was in default — Welcome answered the grievance, participated at the hearing, and presented a defense. If the EGC were to find that Welcome's ability to present a defense had been impaired as a result of its delay in processing the grievance — and not due to her own negligence or other fault

constitutes a mitigating factor under the ABA Standards. Likewise, Welcome provides no legal authority to support her claim — also made in a single sentence — that the existence of an eight-month attorney-client relationship serves as a mitigating factor.

of her own — it could permissibly consider that as a mitigating factor. *See Dayton Bar Ass'n v. Green*, 97 Ohio St. 3d 119, 2002 Ohio 5314, 776 N.E.2d 1060, 1061 (Ohio 2002) ("In mitigation, the panel considered . . . . that relevant records had been destroyed when [respondent's] office water pipes burst, and [respondent] apologized that she could not defend herself for this reason.").

*Welcome*, 2013 V.I. Supreme LEXIS 6 at *42 n.13. In its supplemental decision, the EGC declined to find mitigation for the following reason:

> As to the issue of delay, we find that Welcome responded to the grievance on January 9, 2004[,] and that she had the opportunity to respond while the matter was still fresh. While it is true that this matter languished after the response was submitted, we do not find that the delay impacted [her] ability to defend in these proceedings, and we heard and understood her view of the issues presented during the evidentiary hearing. Without more, we will not find that delay justifies a mitigation of sanctions.

(Supp. Dec. 6.)

The EGC's findings in this regard lack any support in the record, let alone by clear and convincing evidence. This Court, in its rejection of the EGC's original holding that Welcome violated Model Rule 8.1(b), noted that the uncontradicted evidence in the record established that the EGC did not serve Welcome with Richardson's grievance until July 26, 2011, more than eight years after it was filed:

> After receiving Richardson's grievance, the EGC docketed the matter and informed Welcome that it had been filed. In a January 9, 2004 letter, Welcome notified the EGC's Chair that she had not seen a copy of the grievance, but provided copies of the December 1, 2003 and December 23, 2003 letters, the December 30, 2003 stipulation, and the itemized list of services rendered. For reasons not clear from the record, the matter remained dormant until July 26, 2011, when Disciplinary Counsel — who, effective July 1, 2011, assumed all ministerial, investigative, and prosecutorial duties with respect to all new and pending grievances — sent Welcome a letter noting that she had previously indicated that she had not received a copy of the grievance, and requested that she file a written response within 30 days.

2013 V.I. Supreme LEXIS 6 at *6. Thus, Welcome never had an opportunity to respond to the grievance "while the matter was still fresh"; although she provided some documents to the EGC on January 9, 2004, because she may have suspected why Richardson filed a grievance, there is no evidence — let alone clear and convincing evidence — that she knew what claims were filed against her. And since the EGC did not respond to her January 9, 2004 letter — let alone serve her with Richardson's grievance — Welcome could have reasonably assumed, due to her familiarity with the EGC's procedures by virtue of her then-membership, that the EGC had returned the grievance to Richardson because it failed to meet the minimum criteria for docketing, *see* V.I.S.CT.R. 207.1.5(b), or because it concluded that it was frivolous, *see* V.I.S.CT.R. 207.1.7(c).

Moreover, Welcome identified cognizable harm from the delay: she testified that she had taken "copious notes" of her conversations with Richardson, and that she had communicated with Richardson more times than reflected in her statement of services rendered, but could not produce this evidence because her case file had "been lost or destroyed" in the intervening years. (J.A. 87-88.) Although the EGC is correct that Welcome was able to express "her view of the issues," clearly the proceeding would have benefited from these materials. Of course, it is possible that the case file, had it been retained, would not have supported Welcome's defense; however, that is far from certain. Therefore, we find that the instant matter represents one of the rare cases where the EGC's delay in adjudicating the proceeding serves as a mitigating factor, notwithstanding Supreme Court Rule 207.7.7(c), because we cannot conclude, by clear and convincing evidence, that the delay did not harm Welcome's ability to defend against Richardson's grievance.

 Additionally, we find other mitigating factors in this case that were apparently not even considered by the EGC. Pursuant to ABA Standard 9.32(a), "absence of a prior disciplinary record" constitutes a mitigating factor, and the EGC has provided this Court with no evidence that Welcome has a prior history of discipline. Likewise, ABA Standard 9.32(d) provides for mitigation if there is a "timely good faith effort to make restitution or to rectify consequences of misconduct." Although

Welcome did not provide full restitution in that she retained $280,[6] she did refund the remainder of the retainer, and offered to represent Richardson in an action to distribute real property in which she may have an interest. Thus, we conclude that five mitigating factors are present in this case.

### 2. *Aggravating Factors*

The EGC identified three aggravating factors in its supplemental decision: Richardson's status as a "vulnerable" victim, Welcome's lack of remorse or acknowledgement that she engaged in any misconduct, and the fact that her multiple ethical violations did not arise from a single isolated incident of wrongdoing, but stem from several separate and discrete incidents over a prolonged period of time, such as failing to respond to the May 25, 2003 summary judgment motion and not notifying Richardson of the July 14, 2003 Divorce Decree until December 2003. We agree that Welcome's multiple violations constitute an aggravating factor under ABA Standard 9.22(d). However, we reject its remaining two findings of aggravation.

The EGC is correct that, pursuant to ABA Standard 9.22(h), the vulnerability of a victim constitutes an aggravating factor. We disagree, however, with the EGC's conclusion that Richardson is a "vulnerable" victim for purpose of this provision. The EGC found vulnerability on two grounds: that Richardson was a victim of domestic violence, and that she only attained an elementary school education and "had to be assisted by her daughter in conducting her affairs including completing the grievance in this matter." (Supp. Dec. 7.) As Welcome notes in her principal brief, the Superior Court had dismissed, with prejudice, the domestic violence complaint that Richardson filed against her husband, and the record contains no other evidence that would support a finding, by clear and convincing evidence, that Richardson was actually a victim of domestic violence. And while we agree with the EGC that Richardson may have been an unsophisticated client, we also agree with the courts that have found that lack of a formal education, language or cultural barriers, and similar traits do not render a client "vulnerable" for

---

[6] This amount corresponds to the attorney's fee that Welcome earned and deducted from the initial $1,000 retainer based on professional services rendered to Richardson between April 21, 2003, and May 25, 2003. (J.A. 113.)

purposes of aggravation; rather, the client must possess a trait that renders them *particularly* vulnerable to an unethical attorney, such as a physical or mental disability. *See, e.g., In re Carmick*, 146 Wn.2d 582, 48 P.3d 311, 322-23 (2002); *In re Hickox*, 57 P.3d 403, 406 (Colo. 2002).

 Similarly, we believe that the EGC has failed to establish, by clear and convincing evidence, that Welcome "has not expressed any remorse for her conduct" and has "refuse[d] to acknowledge the wrongfulness of her conduct." (Supp. Dec. 5.) As this Court noted in its February 26, 2013 Opinion, Welcome conceded at the April 13, 2012 hearing that she "should have sent [Richardson] the motion and said, here is the motion, we got to file a response." 2013 V.I. Supreme LEXIS 6 at *7. Although not an overwhelming expression of remorse, it is clear that Welcome now believes, with the benefit of hindsight, that she should have done some things differently. And while Welcome has contested the charges against her at every stage of the proceedings before the EGC and this Court, we do not believe that attempting to hold the Office of Disciplinary Counsel to its standard of proof — without more — is sufficient to sustain a finding of aggravation under ABA Standard 9.22(g). Consequently, we find only one aggravating factor present in this case.

### D. The Appropriate Sanction

 Having ascertained that a six-month suspension is the appropriate initial baseline sanction for Welcome's misconduct, and identified the presence of one aggravating and five mitigating factors, we must now fashion the appropriate sanction. Given the totality of the circumstances, we conclude that the five mitigating factors greatly outweigh the single aggravating factor, and warrant a substantial downward departure from the baseline sanction. Accordingly, we hold that the proper sanction is a public reprimand, payment of $982.50 in costs to the Virgin Islands Bar Association,[7] payment of restitution to Richardson in the amount of $280 plus interest from the date she was

---

[7] In our February 26, 2013 Opinion, we noted that the EGC had failed to file an itemized bill of costs with this Court. Along with its supplemental decision, the EGC provided this Court with an itemized bill of costs, demonstrating that it expended $982.50 in transcription expenses during the course of this matter.

retained,[8] and a requirement to obtain a passing score on the Multistate Professional Responsibility Examination. *See* V.I.S.CT. R. 203(a). If Welcome fails to satisfy these requirements before December 31, 2013, this Court may, *sua sponte* or upon motion by Disciplinary Counsel, suspend her from the practice of law for no less than three months.

## III. CONCLUSION

For the foregoing reasons, we grant the petition for disciplinary action, as modified, and direct the EGC to discipline Welcome in accordance with our decision herein.

---

[8] In both her principal and reply briefs, Welcome contends that the EGC's recommendation that she pay Richardson interest on the $280 restitution payment is, in effect, an attempt by the EGC "to punish" her for the delays in adjudicating this matter. (Welcome Br. 7.) The EGC, however, likely ordered payment of interest as a direct response to our decision in *Joseph*, which explicitly held that a grievant who receives a restitution award as a result of an attorney discipline proceeding is entitled to receive interest at the same rate used to calculate pre-judgment interest in Superior Court proceedings. 56 V.I. at 507. In any case, requiring accrual of interest from the date of retention is wholly justified. "A lawyer engaging in a clear and serious violation of duty to a client," as occurred in this case, "may be required to forfeit some or all of the lawyer's compensation for the matter." RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 37 (2000). We agree with the courts that have held that requiring payment of prejudgment interest on a disgorged fee is wholly appropriate not only to compensate the injured client, but to deter attorneys from engaging in ethical misconduct. *See, e.g., Shoemake v. Ferrer*, 168 Wn.2d 193, 225 P.3d 990, 994-95 (2010) (rejecting argument that prejudgment interest should not accrue on attorney's fee, which had been disgorged for unethical conduct).