# IN THE MATTER OF THE SUSPENSION OF: SHARON EICHENAUER-SCHOENLEBEN, ESQUIRE, AS A MEMBER OF THE VIRGIN ISLANDS BAR.

## IN RE: SHARON EICHENAUER-SCHOENLEBEN, ESQUIRE, Respondent

S. Ct. Civil No. 2013-0051, S. Ct. Civil No. 2013-0076

Supreme Court of the Virgin Islands

October 25, 2013

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Thomas, USVI, *Attorney for Subcommittee of the V.I. Bar Ass'n Ethics & Grievance Committee.*

DELPHINE FARR JANEY, ESQ., Disciplinary Counsel, St. Thomas, USVI, *Attorney for Office of Disciplinary Counsel.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(October 25, 2013)

PER CURIAM. These matters are before the Court pursuant to a petition for disciplinary action filed by the Ethics & Grievance Committee of the Virgin Islands Bar Association ("EGC"), which requests that this Court approve its recommendation to, among other things, suspend Sharon Eichenauer-Schoenleben, Esq., from the practice of law for ten months, as well as a petition for transfer to disability inactive status by consent. For the reasons that follow, we reject the petition for transfer and grant the petition for disciplinary action, as modified.

## I. BACKGROUND

In November 1992, Edward Haas began to borrow money from his then-girlfriend, Dolores Ingram. Haas and Ingram both resided in Pennsylvania, but Haas secured the loan using real property he owned in St. John. By July 1996, Haas owed Ingram approximately $168,804.26 in unpaid principal and interest. When Haas failed to repay this debt after several requests for payment, Ingram sued Haas in Pennsylvania state court on October 23, 1996. Although that court scheduled a trial for March 23, 1998, Haas failed to appear; nevertheless, the trial proceeded in his absence, and the court entered a judgment against him and in favor of Ingram. On November 17, 1998, the Pennsylvania court issued Ingram

a power of attorney permitting her to sell the St. John property to satisfy the judgment. While Haas appealed that judgment, a Pennsylvania appellate court affirmed the trial court in a March 23, 1999 Opinion.

Ingram used the power of attorney to sell the St. John property. Haas subsequently hired a relatively large St. Thomas law firm to file a replevin action on his behalf in the Superior Court,[1] which it did on March 6, 2000, alleging that the power of attorney was contrary to Virgin Islands foreclosure law and that he was entitled to redeem it. Ingram, through her counsel, subsequently filed a motion to dismiss, which notified the Superior Court of the Pennsylvania appellate court's March 23, 1999 Opinion affirming the Pennsylvania trial court's judgment.

On November 13, 2002, the Superior Court permitted the St. Thomas law firm to withdraw as Haas's counsel due to non-payment of fees. Haas then retained Eichenauer-Schoenleben to represent him in the Superior Court proceeding, and she entered an appearance on his behalf on April 30, 2003. On January 30, 2004, Eichenauer-Schoenleben notified the Superior Court that Haas had been arrested for contempt of court in Pennsylvania for interfering with the power of attorney by filing the Virgin Islands lawsuit, and that he filed a second appeal in Pennsylvania, which was still pending. Eichenauer-Schoenleben did not, however, disclose that the Pennsylvania court expressly advised the parties that they could proceed with the Virgin Islands litigation despite the pendency of the contempt appeal.

Discovery remained ongoing; however, despite receiving multiple requests for written discovery from opposing counsel, Eichenauer-Schoenleben failed to respond until the Superior Court, in an April 6, 2004 Order, required her to respond to the requests. Although Haas wrote to Eichenauer-Schoenleben on May 21, 2004, noting that he wished to engage in factual discovery, including taking depositions, and Eichenauer-Schoenleben agreed to notice the deposition "immediately," Eichenauer-Schoenleben failed to take any depositions, request any written discovery, or request the disclosures provided for in Federal Rule

---

[1] Before October 29, 2004, the Superior Court of the Virgin Islands had been known as the Territorial Court of the Virgin Islands. Nevertheless, for convenience this memorandum refers to the former Territorial Court as the Superior Court. *See* Act No. 6687, § 1(b) (V.I. Reg. Sess. 2004) (amending 4 V.I.C. § 2 by substituting "Superior" in place of "Territorial" in the name of courts of local jurisdiction in the U.S. Virgin Islands, effective October 29, 2004).

of Civil Procedure 26.[2] On July 22, 2004, Haas wrote to Eichenauer-Schoenleben stating that he had tried to get in touch with her for several weeks, and had received no response.

At a status conference held on August 23, 2004, the Superior Court indicated that it wished to wait for resolution of the second Pennsylvania appeal, based on Eichenauer-Schoenleben's representation that it addressed the power of attorney. Eichenauer-Schoenleben, however, still did not disclose that the appeal solely addressed the contempt issue — and not the validity of the underlying power of attorney — or that the Pennsylvania court had advised the parties that the Virgin Islands litigation could proceed. On December 14, 2004, opposing counsel notified the Superior Court that the Pennsylvania appellate court resolved the contempt appeal, and did not disturb the power of attorney.

At this point, Haas's case languished in the Superior Court with virtually no activity for approximately seven years. On July 6, 2006, January 9, 2007, May 5, 2008, and May 2, 2011, Haas wrote to Eichenauer-Schoenleben requesting updates on the litigation, but she never responded to any of his communications. Haas also tried to visit Eichenauer-Schoenleben in-person at her law office approximately 12 times, but she was never there. Moreover, when Haas saw Eichenauer-Schoenleben on the street and attempted to speak to her, she would pretend not to recognize him.

Ultimately, Haas filed a grievance with the EGC on August 1, 2011. Eichenauer-Schoenleben timely submitted a written response to Haas's grievance on August 15, 2011, where she attributed the failure to move the litigation forward to Haas never providing her with a copy of the Pennsylvania court's disposition of the contempt appeal. She also alleged that either Haas never called her, or did not leave a message on her answering machine. On August 23, 2011, Eichenauer-Schoenleben filed a motion with the Superior Court to withdraw as Haas's counsel — her first substantive filing in approximately six years — which the Superior Court subsequently granted in a September 20, 2011 Order. Haas chose to continue the litigation *pro se*, and the Superior Court, in a July 20, 2012 Order, dismissed his complaint with prejudice.

---

[2] "Depositions and discovery shall be had in the Superior Court of the Virgin Islands, pursuant to the provisions of Rules 26 to 37, inclusive of the Federal Rules of Civil Procedure." SUPER. CT. R. 39(a).

The EGC issued a Notice of Hearing on July 11, 2012, advising Eichenauer-Schoenleben that she was charged with violating Model Rules of Professional Conduct 1.1, 1.3, and 1.4. At the August 27, 2012 hearing, the EGC heard testimony from both Haas and Eichenauer-Schoenleben. At the hearing, Eichenauer-Schoenleben testified that she never saw the decision of the Pennsylvania court advising the parties that they could proceed with the Virgin Islands litigation notwithstanding the pendency of the contempt appeal until after Haas filed his grievance. Although she acknowledged that opposing counsel had filed the contempt decision with the Superior Court on December 14, 2004, she claimed that she must not have been served with a copy. She also testified that she did speak to Haas on the phone, but that she had no records to corroborate this claim because she does not charge clients for phone calls.

At the hearing, Eichenauer-Schoenleben admitted to never receiving Haas's client file from his former law firm, and to never reviewing Ingram's motion to dismiss or the Pennsylvania appellate court's March 23, 1999 Opinion affirming the grant of the power of attorney. When asked why she did not obtain the record from the Superior Court, Eichenauer-Schoenleben said that because the Superior Court file "was quite huge," she "wanted Mr. Haas to get that for [her]" from the Superior Court or from his prior attorney. (Hearing Tr. 98.)

The EGC issued its disposition on March 28, 2013, in which it found that Eichenauer-Schoenleben violated Model Rules 1.1, 1.3, and 1.4, and, after identifying a six-month suspension as the baseline sanction and identifying three aggravating factors and one mitigating factor, recommended that this Court suspend her from the practice of law for ten months, as well as order payment of costs and restitution. When Eichenauer-Schoenleben failed to move the EGC for reconsideration or take an appeal to this Court, the EGC filed its petition for disciplinary action on July 17, 2013, which this Court docketed as S. Ct. Civ. No. 2013-0051.

In a July 18, 2013 Order, this Court established a briefing schedule, directing Eichenauer-Schoenleben to respond to the petition on or before August 8, 2013. When Eichenauer-Schoenleben failed to respond, this Court, in an August 9, 2013 Order, *sua sponte* extended the deadline to August 16, 2013, and explicitly advised Eichenauer-Schoenleben that any further failure to respond may result in this Court proceeding as if she were in default. Although the August 16, 2013 deadline lapsed,

Eichenauer-Schoenleben did not file a response to the petition, request an extension of time, or file any other documents with this Court. While Eichenauer-Schoenleben received electronic service of this Court's orders, out of an abundance of caution this Court, in an August 30, 2013 Order, directed the EGC to file proof that Eichenauer-Schoenleben had been duly served with its original July 17, 2013 petition. On September 6, 2013, the EGC, through its Chair, submitted to this Court a copy of a certified mail receipt evincing that its petition had been received on July 25, 2013, as well as an August 12, 2013 email sent by Eichenauer-Schoenleben in response to an August 9, 2013 follow-up email from the EGC. However, the Chair also requested that this Court stay a decision on the petition until September 30, 2013, for unspecified reasons. This Court granted the request, and held the disciplinary matter in abeyance.

On September 13, 2013, the Chair filed with this Court a "Petition for Transfer to Disability Inactive Status," which this Court docketed as S. Ct. Civ. No. 2013-0076. This petition asks that this Court accept an "Offer to Consent to Transfer to Disability Inactive" jointly executed by Eichenauer-Schoenleben, Disciplinary Counsel, and the Chair, which, if accepted, would provide that all disciplinary proceedings against her be deferred. However, the petition was not accompanied with any evidence to support the claim that Eichenauer-Schoenleben is disabled.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court possesses exclusive jurisdiction to discipline members of the Virgin Islands Bar. V.I. CODE ANN. tit. 4, § 32(e). As we have previously explained,

> The disciplinary procedures adopted by the Court require the Bar's Ethics and Grievance Committee to obtain an order from this Court to disbar an attorney from the practice of law in the Virgin Islands. In reviewing the record in this case and the Memorandum of Decision entered by the Bar's adjudicatory panel, we exercise independent judgment with respect to both findings of fact and conclusions of law on all issues, including the sanction recommended by the Bar. Under our independent review, we carefully consider the adjudicatory panel's analysis, but must separately determine, like the adjudicatory panel, whether there is clear and convincing evidence that the respon-

dent violated the Model Rules of Professional Conduct. Our review in this respect is virtually *de novo*, except we do not hear and consider anew live testimony. If we find that the respondent has violated the rules, we must also decide whether to adopt the panel's recommended discipline or whether some other type of discipline is warranted.

*V.I. Bar v. Brusch*, 49 V.I. 409, 411-12 (V.I. 2008) (footnotes and citations omitted). "[T]he failure to timely answer a grievance shall be deemed an admission by the Respondent to all factual allegations contained in the grievance, and shall permit the grievance to proceed on a default basis." *In re Suspension of Parson*, 58 V.I. 208, 214 (V.I. 2013) (quoting *In re Drew*, S. Ct. BA. No. 2007-0013, 2008 V.I. Supreme LEXIS 26, at *9 (V.I. June 30, 2008) (unpublished)) (internal quotation and other punctuation marks omitted)). However, when an attorney answers the grievance and otherwise participates in proceedings before the EGC, yet refuses to cooperate with this Court in its consideration of the EGC's petition, this Court also proceeds as if the attorney is in default. 58 V.I. at 215. ("Due to [the respondent]'s failure to cooperate with . . . this Court, we review the Committee's decision solely 'to independently determine whether the panel correctly held that these facts constituted ethical violations.' ") (quoting *In re Suspension of Joseph*, 56 V.I. 490, 499 (V.I. 2012)).

### B. The Disability Inactive Status Petition is Not Properly Before this Court

Pursuant to Supreme Court Rule 207.6.24, a lawyer who "possesses a physical or mental condition that adversely affects the lawyer's ability to practice law" may be transferred to disability inactive status. V.I.S.Ct.R. 207.6.24(a). When the respondent in an attorney discipline proceeding alleges an inability to defend, the EGC must notify this Court, and the EGC must ultimately determine whether the claim of incapacity is valid. V.I.S.Ct.R. 207.6.24(c).

As a threshold matter, it is well established that, after the EGC has concluded its investigation into an attorney's ethical misconduct and issued its recommended sanction, the attorney may not subsequently avoid imposition of discipline by this Court by attempting to resign from the Virgin Islands Bar, *see In re Suspension of Adams*, 58 V.I. 356, 362 (V.I. 2013) (citing *In re Drew*, 2008 V.I. Supreme LEXIS 26, at *5), V.I.S.Ct.R. 206(c)(1) ("Any member of the bar may voluntarily resign

therefrom, provided that . . . the resignation was not filed in lieu of disciplinary proceedings . . ."), or petitioning for a transfer to inactive status, *see* V.I.S.Ct.R. 206(b)(1) ("The pendency of disciplinary or other similar proceeding anywhere shall be a bar to the grant of inactive status."). Although Rule 207.6.24, unlike Rules 206(c)(1) and 206(b)(1), authorizes transfers to disability inactive status despite the pendency of disciplinary proceedings, this rule nevertheless "does not allow the use of disability procedure as a substitute for discipline." *In re Swanson*, 1998 ND 60, 575 N.W.2d 218, 220 (1998).

■ Here, we find that the petition to transfer Eichenauer-Schoenleben to disability inactive status and to indefinitely defer a ruling on the petition for disciplinary action is not properly before this Court. First, we note that "Rule 207 is intended to limit the powers *of the Ethics and Grievance Committee*, not the jurisdiction of this Court." *In re Motylinski*, S. Ct. BA. Nos. 2009-0220, 2012-0106, 2013 V.I. Supreme LEXIS 10, *7 (V.I. Mar. 14, 2013) (unpublished) (emphasis in original). Consequently, the portion of Rule 207.6.24 authorizing a stay of disciplinary proceedings applies only to matters before the EGC itself, and not to an original proceeding in this Court.

■ But even if we were inclined to extend this procedure to cases, such as this one, where the EGC proceedings have concluded, Rule 207.6.24, by its own terms, does not entitle a respondent to an automatic stay of indefinite duration merely because the respondent alleges an inability to defend. Rather, the EGC must hear evidence and determine whether that claim is valid or invalid. V.I.S.Ct.R. 207.6.24(c)(1)-(5). Here, the EGC, through its Chair, has provided this Court with absolutely no evidence that Eichenauer-Schoenleben is actually unable to participate in these proceedings; rather, it appears Disciplinary Counsel and the EGC have simply taken Eichenauer-Schoenleben at her word, notwithstanding the fact that Rule 207.6.24 contemplates proof of an actual physical or mental disability. In fact, neither the September 13, 2013 petition nor the accompanying "Offer to Consent" even identifies the disability that purportedly renders Eichenauer-Schoenleben unable to defend herself in these proceedings or to practice law. Accordingly, we reject the petition to transfer Eichenauer-Schoenleben to disability inactive status, and instead review the petition for disciplinary action on the merits.

## C. Ethical Violations

█ In its March 28, 2013 disposition, the EGC found that Eichenauer-Schoenleben violated Model Rules of Professional Conduct 1.1, 1.3, and 1.4. Since Eichenauer-Schoenleben timely responded to Haas's grievance and otherwise fully participated in all proceedings before the EGC, the EGC did not proceed on a default basis, and did not adjudicate her of violating Model Rule 8.1(b). However, despite being duly served with the EGC's petition, receiving multiple opportunities to respond to the EGC's petition in this Court, and being specifically advised that failure to respond to the petition may result in her default, Eichenauer-Schoenleben has not filed any documents with this Court. Thus, Eichenauer-Schoenleben has violated Model Rule 8.1(b) through her complete and unexplained failure to comply with this Court's request for a response. *Brusch*, 49 V.I. at 419. Accordingly, we accept all the factual allegations against Eichenauer-Schoenleben as true, and review the EGC's analysis solely to determine if those facts rise to the level of ethical violations. *Joseph*, 56 V.I. at 499.

█ Model Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client," with "[c]ompetent representation requir[ing] the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." We agree with the EGC that, by failing to review the Superior Court file — including Ingram's motion to dismiss and the first Pennsylvania appellate court opinion — either before or shortly after undertaking her representation of Haas, Eichenauer-Schoenleben violated Model Rule 1.1. *See In re LeBlanc*, 884 So.2d 552, 557 (La. 2004) (sustaining Rule 1.1 violation for failing to review court record or client file).

█ Pursuant to Model Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Eichenauer-Schoenleben's failure to review Haas's file in a timely manner also implicates this provision. *See In re Matter of Mekler*, 669 A.2d 655, 663-64 (Del. 1995) (failure to review record until five months after commencing representation violated Rule 1.3). However, her complete failure to file any documents in Haas's litigation for several years — notwithstanding the fact that Haas, as the plaintiff, possessed the affirmative duty to move the litigation forward, *see Watts v. Two Plus Two, Inc.*, 54 V.I. 286, 292 (V.I. 2010) — constitutes an independent violation

of Rule 1.3. *See, e.g., In re Polk*, 288 Ga. 63, 701 S.E.2d 161, 162 (2010); *In re Sundby*, 2005 ND 135, 701 N.W.2d 863, 864 (2005).

■ Likewise, we agree that Eichenauer-Schoenleben violated Model Rule 1.4, which provides that an attorney must "keep the client reasonably informed about the status of the matter," and "promptly comply with reasonable requests for information" from the client. Accepting all of Haas's claims as true — as we must, in light of Eichenauer-Schoenleben's default — the evidence is more than sufficient to establish that, despite receiving multiple inquiries from Haas over an extended period of time, Eichenauer-Schoenleben simply ignored Haas and the underlying litigation until he filed his grievance. This sort of sustained failure to communicate over a period spanning several years constitutes the quintessential Rule 1.4 violation. *Joseph*, 56 V.I. at 500-01. Thus, we agree with the EGC that Eichenauer-Schoenleben violated Model Rules 1.1, 1.3, and 1.4.

## D. Sanctions

■ Because the EGC correctly concluded that Eichenauer-Schoenleben committed misconduct, we now determine whether to accept its recommended sanction. To ascertain the proper sanction, this Court "consider[s] the following four factors: '[1] the duty violated; [2] the lawyer's mental state; [3] the potential or actual injury caused by the lawyer's misconduct; and [4] the existence of aggravating or mitigating factors.' " *Brusch*, 49 V.I. at 420 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.B., Std. 3.0 (1986 as amended 1992)). "The Court considers the first three factors to initially determine the appropriate sanction," and only "consider[s] the presence of any relevant aggravating or mitigating factors to determine whether to depart from that initial determination." *Id.* Furthermore, we must be "mindful that the purpose of disciplinary sanctions . . . 'is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.' " *Id.* at 419 (quoting STD'S FOR IMPOSING LAWYER SANCTIONS § III.A., Std. 1.1).

■ In its March 28, 2013 disposition, the EGC identified a six-month suspension as the baseline sanction. The EGC arrived at this determination by finding that Eichenauer-Schoenleben violated serious ethical duties, engaged in willful misconduct, and caused actual injury.

We largely agree. As the EGC correctly noted, "the duties set forth in Model Rules 1.1, 1.3, and 1.4 are among the most important ethical duties owed by a lawyer." *Joseph*, 56 V.I. at 505 (citing *Brusch*, 49 V.I. at 420). Moreover, the evidence established that Eichenauer-Schoenleben was not merely negligent, but committed willful misconduct; for example, during her testimony at the August 27, 2012 hearing, Eichenauer-Schoenleben attributed her failure to obtain the record from the Superior Court to its large size, and argued that Haas should have gotten it for her. Likewise, in a post-hearing submission filed with the EGC, Eichenauer-Schoenleben argued that it would have been a "folly" for her to notify the Superior Court of the disposition of the Pennsylvania contempt appeal because she believed the judge would have immediately dismissed Haas's case and required him to pay Ingram's costs and attorney's fees. In addition, like the EGC, we are troubled by Eichenauer-Schoenleben's claim that Haas's disappointment with her representation stems simply from him expecting "five-star service on a McDonald's budget." (Posthearing Mem. 7.)

 We disagree, however, with the EGC's conclusion that Haas suffered an actual injury. The ABA Standards define an "injury" as "harm . . . which results from a lawyer's misconduct," while a "potential injury" is defined as "harm . . . that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." STD'S FOR IMPOSING LAWYER SANCTIONS § III. In this case, the EGC identifies the actual injury suffered as the Superior Court's dismissal of Haas's complaint for failure to prosecute. However, the record reflects that Haas, while proceeding *pro se* after Eichenauer-Schoenleben withdrew as counsel, also failed to file any documents with the Superior Court for more than a year. In the absence of any evidence that the Superior Court dismissed Haas's complaint as a result of inaction by Eichenauer-Schoenleben, as opposed to Haas himself, we decline to find an actual injury,[3] but conclude that Haas suffered a potential injury since his complaint could have been dismissed had Ingram, or the Superior Court acting *sua sponte*, sought dismissal on that basis during the lengthy

---

[3] Alternatively, the EGC posits that Haas suffered an actual injury because "the services he received were not worth the $1,176.00 that he paid." However, it is not clear to us how the fee Haas paid Eichenauer-Schoenleben is an injury that *resulted* from her misconduct, as required by the ABA Standards.

period of inactivity. Nevertheless, we find that the EGC's error is harmless, since a six-month suspension remains the baseline sanction for willful breaches of serious ethical duties regardless of whether the resulting injury is actual or potential. STD'S FOR IMPOSING LAWYER SANCTIONS § III.C., Stds. 4.42(a), 4.52.

 Having identified a six-month suspension as the appropriate baseline sanction, we now determine whether any aggravating or mitigating factors may warrant an upward or downward departure. In its disposition, the EGC identified Eichenauer-Schoenleben's lack of prior discipline as the only mitigating factor, while noting three aggravating factors: her lack of remorse, the fact that she violated the ethical rules multiple times, and her significant experience in the practice of law. The EGC concluded that the three aggravating factors heavily outweighed the single mitigating factor, and warranted a four-month upward departure from the six-month baseline.

We agree with the EGC's analysis. While Eichenauer-Schoenleben possesses a right to "contest[] the charges against her" and "to hold the Office of Disciplinary Counsel to its standard of proof," *In re Suspension of Welcome*, 58 V.I. 604, 618 (V.I. 2013), the fact that she justified her misconduct by pointing to her low fees and contending that her failure to timely file documents benefited Haas establishes a lack of remorse that warrants a harsher sanction. *See, e.g., In re Chisholm*, 679 A.2d 495, 503-04 (D.C. 1996) (finding lack of remorse from respondent's "testimony that he did his client 'a favor' by failing to pursue the appeal" his client requested); *In re Ferguson*, 170 Wn.2d 916, 246 P.3d 1236, 1250 (2011) (explaining, for purposes of ABA Standard 9.22(g), lack of remorse occurs when a respondent actively argues that wrongful conduct was proper or attempts to rationalize the ethical violations). Moreover, the evidence established that Eichenauer-Schoenleben's "multiple ethical violations did not arise from a single isolated incident of wrongdoing, but stem from several separate and discrete incidents over a prolonged period of time." *Welcome*, 58 V.I. at 617. Likewise, Disciplinary Counsel established at the August 27, 2012 hearing that Eichenauer-Schoenleben has actively practiced law since 1990, and that she therefore had substantial experience in law that makes her more culpable for her ethical violations. *See, e.g., In re Lopez*, 350 Ore. 192, 252 P.3d 312, 317 (2011) (finding substantial experience when attorney had practiced law for over 20 years).

■ Additionally, while Eichenauer-Schoenleben participated in the proceedings conducted by the EGC, she subsequently violated Model Rule 8.1 by disregarding this Court's July 18, 2013 and August 9, 2013 Orders by failing to respond to the EGC's petition for disciplinary action, resulting in her default before this Court. An attorney's violation of Model Rule 8.1, in addition to constituting a substantive ethical violation, is an aggravating factor in its own right. *In re Adams*, 58 V.I. at 365. We are particularly troubled by Eichenauer-Schoenleben's repeated failure to comply with our orders, given the similarities between her Model Rule 8.1 violation and the underlying misconduct, which includes her failure to respond to Haas's correspondence and to move his Superior Court litigation forward in a timely manner. Consequently, we view Eichenauer-Schoenleben's failure to respond as a significant, additional aggravating factor in this case.

Based on the foregoing, we conclude that the four aggravating factors greatly outweigh the single mitigating factor, to the extent where an upward departure from the baseline sanction of a six-month suspension is warranted. Accordingly, this Court shall suspend Eichenauer-Schoenleben from the practice of law for 12 months, require her to make restitution to Haas in the amount of $1,176.00 along with appropriate interest, *see* 5 V.I.C. § 426(a), and reimburse the EGC for the costs it has, and will, incur in conjunction with this matter.

## III. CONCLUSION

This Court rejects the petition to transfer Eichenauer-Schoenleben to disability inactive status, and instead grants the petition for disciplinary action. We suspend Eichenauer-Schoenleben from the practice of law for 12 months, effective fifteen days from the date of this decision. V.I.S.Ct.R. 207.5.5(a). Upon expiration of the 12 month suspension, and payment of costs and restitution, Eichenauer-Schoenleben may petition for reinstatement in accordance with Supreme Court Rule 203(h).